J-S16016-15 & J-S16017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.E.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.A.D., MOTHER | No. 1625 MDA 2014 |

Appeal from the Order entered August 28, 2014,
in the Court of Common Pleas of Centre County, Civil
Division, at No(s): CP-14-DP-0000021-2014

| | |
|---|---|
| IN THE INTEREST OF: J.E.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.S., SR., FATHER | No. 1650 MDA 2014 |

Appeal from the Order entered August 28, 2014,
in the Court of Common Pleas of Centre County, Civil
Division, at No(s): CP-14-DP-0000021-2014

BEFORE:  PANELLA, OLSON, and OTT, JJ.

MEMORANDUM BY OLSON, J.:                              **FILED APRIL 06, 2015**

B.A.D. ("Mother"), and C.S., Sr., ("Father"), the parents of the subject child, J.E.D., born in August of 2014, ("Child"), appeal the orders dated and entered August 28, 2014, granting the petition filed by Centre County Children and Youth Services ("CYS" or the "Agency") to adjudicate Child dependent and remove him from the custody of his parents and place him in foster care, pursuant to sections 6302 and 6351 of the Juvenile Act, 42 Pa.C.S.A. §§ 6302 and 6351, and finding aggravated circumstances such that reunification services would not be provided for the family, pursuant to section 6341(c.1) of the Juvenile Act, 42 Pa.C.S.A. § 6341(c.1).  We affirm.

The trial court set forth the following:

The event that precipitated CYS's involvement with [Father], Mother[ ] and J.E.D. [ ] occurred at the Mt. Nittany Medical Center in State College, Centre County, Pennsylvania on August --, 2014, less than 24 hours after J.E.D.'s birth. The child was brought to Mother's room, and in less than half an hour, Mother fell asleep with J.E.D. in her arms. She was awoken [sic] by a nightmare and noticed J.E.D. lying on the ground. [Father] was also present and sleeping in the hospital room. Upon noticing J.E.D. on the floor, Mother picked him up, inspected him for injury, and attempted to give him a bottle. Neither [Father] nor Mother immediately sought medical attention for J.E.D., but eventually sought out nursing staff to evaluate him. Ultimately, when the nursing staff arrived, they learned from Mother that the child had fallen. J.E.D. had a CT scan and other medical evaluations which revealed the child had suffered a large hematoma and a right parietal skull fracture. No charges have been filed against [Father] or Mother at this time.

Trial Court Opinion re Father's appeal, 10/7/14, at 3; Trial Court Opinion re Mother's appeal, 10/7/14, at 3.

On August 15, 2014, CYS filed a petition for emergency protective custody and a shelter care petition with regard to Child. On August 15, 2014, the trial court entered an order granting the petition for emergency protective custody.

On August 18, 2014, the trial court held a shelter care hearing. On that same date, the trial court also appointed a guardian *ad litem* for Child, Attorney Parviz Ansari. At the hearing on August 18, 2014, CYS presented the testimony of Robin Cain, a CYS caseworker assigned to Child's case. Counsel for Mother, Attorney Justin Miller, and the guardian *ad litem*

conducted cross-examination of Ms. Cain.[1] After the conclusion of the hearing on August 18, 2014, the trial court entered a shelter care order. Additionally, on August 18, 2014, the trial court entered orders appointing Attorney Miller as counsel for Mother, and Attorney Ronald McGlaughlin as counsel for Father.

On August 19, 2014, CYS filed a dependency petition and a motion for a finding of aggravated circumstances. On August 28, 2014, the trial court held an adjudicatory hearing on the dependency of Child, and a hearing on the aggravated circumstances petition. At the hearing, CYS presented the testimony of Ms. Cain. Attorney Miller, Attorney McLaughlin, and the guardian *ad litem* conducted cross-examination of Ms. Cain.

Based on the testimony and other evidence at the hearing on August 28, 2014, the trial court made the following findings of fact.

> 1) On August --, 2014, [B.A.D.] gave birth to [J.E.D.] at Mount Nittany Medical Center located in State College, Pennsylvania. The biological father had been identified as [B.A.D.'s] current paramour, [C.S.].
>
> 2) On August --, 2014, [B.A.D. and C.S] were the sole caregivers for [J.E.D.] at Mount Nittany Medical Center. At 9:40 a.m., [B.A.D.] informed the hospital staff that between 9:20 a.m. and 9:40 a.m., she dropped [J.E.D.] on the floor while sleeping in her hospital bed. It was determined by medical staff that [J.E.D.] sustained a large hematoma and a right parietal skull fracture. Due to the serious injuries [J.E.D.] suffered only hours after his birth, [B.A.D. and C.S.] are currently being investigated for suspected child abuse.

---

[1] Father appeared *pro se* at the hearing, and did not question the witness. Attorney Miller did not represent Father, and recommended that Father request his own separate counsel. N.T., 8/18/14, at 17.

3) [B.A.D.] has an extensive history with Centre County Children and Youth Services. She was initially referred to the Agency on July 19, 2009, and has been intermittently involved since that time.

4) The [D.] family was opened for protective services on August 11, 2011 and remained open until August 27, 2013, when [J.E.D.'s] three older half-siblings were placed in the care and custody of Centre County Children and Youth Services by an Order for Emergency Protective Custody.

5) Historically, issues of concern have been domestic violence between [B.A.D.] and the father of her three older children, [B.D., H.D. and D.D.], his addiction to alcohol, overcrowded, unclean and unorganized home conditions and harsh physical discipline by [B.A.D.].

6) On August 26, 2013, while in the care of her mother, [B.A.D.], [H.D.], age 3½ years, suffered a dislocation of her elbow that resulted in pain if she used her arm and hand; the injury which impaired the child's functioning was not treated in a reasonable period of time and treatment was obtained the following day only when her mother was directed to do so. On September 24, 2013, the [c]ourt found clear and convincing evidence that child abuse had occurred with regard to [H.D.], in that she had experienced impairment and severe pain and that treatment had been delayed by her mother, [B.A.D.]. The report was filed as Founded to Child[L]ine.

7) On February 27, 2007, [C.S.], biological father of [J.E.D.], entered a guilty plea to Indecent Assault; 18 Pa.C.S. §3126(a)(1); M2. At that time the [c]ourt ordered that he not be in the lone company or be in a supervisory capacity of any person under the age of 18.

8) [C.S.] has recently undergone an assessment by Project Point of Light. It is anticipated that he will need to participate in treatment for a minimum of 18 months before a determination can be made regarding his ability to be in the company of minors without appropriate supervision. Until then, he remains a risk to minors.

9) Formal reunification services have been provided to [B.A.D.] by the Centre County Youth Service Bureau since November of 2013. To date, little progress has been made with regard to reuniting [B.A.D.] with her three older children.

10) Under these circumstances, the safety of [J.E.D.], a . . .-day-old infant, could not be assured if he were to be returned to the care and custody of either or both of his biological parents.

Trial Court Findings of Fact, 8/28/14.

In its Pa.R.A.P. 1925(a) opinion, the trial court made the following determinations with regard to the procedural history and factual background of this matter.

[Father] is the biological father of [Child], as well as two other children. CYS has been involved with [Father's] family intermittently with regard to his two other children who are not in his custody. On February 27, 2007, [Father] entered a guilty plea to Indecent Assault. At that time, the [trial court] ordered that he not be in the lone company or in a supervisory capacity of any person under the age of 18. At the end of 2013, [Father] sent a photo of his penis on his phone to a 14[-]year[-]old minor child. [Father] is currently involved in treatment at Project Point of Light, which he has previously completed, but has not finished the current program which is necessary to prove that he is safe to be around children.

[Mother] is the biological mother of [Child], as well as three older children: B.A.D. (D.O.B. 07/--/08), H.R.D. (D.O.B. 02/--/10), and D.M.D. (D.O.B. 08/--/11). B.A.D., D.M.D., and H.R.D. are currently dependent and in foster care. CYS has an extensive history with Mother. CYS became involved with Mother's family shortly after the birth of the firstborn child B.A.D., who is now 6 years old. Historically, CYS has been involved with the family due to concerns regarding home conditions, domestic violence, alcohol dependency, hygiene, and the improper administration of corporal punishment, as well as general issues with parenting skills, housing, and homelessness. On August 26, 2013, while in the care of Mother, H.R.D. suffered an elbow dislocation. Mother did not seek medical care for H.R.D. until the following day when a family services provider

- 5 -

came to the house for a scheduled visit, immediately noticed H.R.D. in obvious pain, and instructed Mother that H.R.D. needed to go to the Emergency Room. The family services provider then cancelled their appointment and instead drove Mother and H.R.D. to the hospital. On September 24, 2013, the [trial court] found clear and convincing evidence that child abuse had occurred with regard to H.R.D.

Formal reunification services have been provided to Mother by CYS since November 13, 2013. To date, Mother has made little progress to reunite with her three older children and they remain in foster care. She initially made some progress, but her efforts have significantly dropped off. Her progress includes obtaining her driver's license, maintaining a part-time cleaning job, and attending reunification services. However, she does not implement CYS feedback or suggestions consistently and has not made progress to warrant increasing her visitation from biweekly 3-hour, fully supervised visits. Mother has been on notice that she must make significant progress to reunite with her children but has been unable or unwilling to do so. Throughout reunification, she stayed in her grandmother's overcrowded apartment. Currently, she is technically homeless though she temporarily is staying with her parents as of September 11, 2014. Mother makes less than $400/month and acknowledges that it is not enough to provide for her children, but does not utilize any of the resources CYS provides her to help her find a better job. CYS currently anticipates that they will recommend terminating reunification services at the next hearing in November 2014. CYS views Mother's relationship with [Father] as a barrier to reunification with her three older children.

* * *

CYS concluded that no efforts should be made to reunite the family. CYS made this determination based on aggravated circumstances, namely Mother's history based on her other three children, including a finding of child abuse; [Father's] criminal history, including an Order that he not be around children; and the incident at the hospital less than 24 hours after J.E.D.'s birth wherein he sustained serious injuries. The [trial court] agreed with the CYS recommendation and therefore [adjudicated] J.E.D. dependent and found that aggravated circumstances existed. The [trial court] determined that CYS did not need to make additional efforts to reunite the family.

Trial Court Opinion re Father's appeal, 10/7/14, at 1-4; Trial Court Opinion re Mother's appeal, 1/7/14, at 1-3.[2]

On August 28, 2014, the trial court entered an order adjudicating Child dependent, directing that legal custody was with CYS, and ordering Child placed in foster care, with a permanency goal of adoption. The trial court also entered an order on August 28, 2014, finding aggravated circumstances existed as to Mother and Father, such that CYS was not to provide reunification services to reunify Child with Mother and Father. The orders entered on August 28, 2014 established a thirty-day permanency review hearing.

On September 15, 2014, CYS filed a permanency plan for Child. On September 25, 2014, the trial court held a permanency review hearing. At the hearing, CYS presented the testimony of Melanie Robison, its employee assigned to the case; and Raelee Hulek, a family counselor for the CYS reunification program. Counsel for Mother, Father, and the guardian *ad litem* conducted cross-examination of both witnesses. After the hearing on September 25, 2014, the trial court entered a permanency review order,

---

[2] The content of the trial court's findings is the same in both of the trial court opinions regarding Mother's and Father's appeals. Additionally, the trial court found that another individual, T.M., is the biological father of three of Mother's children: B.A.D., M.D., and H.R.D. Trial Court's Opinion re Mother's appeal, at 1.

maintaining Child in foster care placement, and maintaining his permanency goal as adoption, with legal custody retained by CYS.

On September 29, 2014, Mother and Father timely filed their respective notices of appeal from the August 28, 2014 orders, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). *See* 1 Pa.C.S.A. § 1908 (regarding computation of time).[3]

On appeal, Father and Mother raise an identical issue:

> 1. Did the Trial Court err and abuse its discretion in concluding that no efforts need to be made to reunify the family pursuant to 42 Pa.C.S.A. § 6341(c.1)?

Father's Brief at 9; Mother's Brief at 10.

Additionally, Father raises a second issue, as follows:

> * * *

> II. Did the trial court err and abuse its discretion in allowing hearsay testimony relative to the psychosocial/sexual evaluation of Father from Project Point of Light in violation of 42 Pa.C.S.A. § 6341(a)(2)?

Father's Brief, at 9.

Our Supreme Court set forth our standard of review for dependency cases as follows.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the

---

[3] This Court, acting *sua sponte*, listed the appeals consecutively on October 22, 2014. We will review the appeals in one Memorandum for ease of disposition.

- 8 -

record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Additionally, "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G., T.*, 845 A.2d 870, 872 (Pa. Super. 2004).

Section 6302 of the Juvenile Act defines a "dependent child" as a child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. **A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]**

42 Pa.C.S.A. § 6302(1) (emphasis added).

Section 6341(a) and (c) of the Juvenile Act provides in pertinent part:

**(a) General rule.—** After hearing the evidence on the petition the court shall make and file its findings as to whether the child is a dependent child. . . .

. . .

**(c) Finding of Dependency.—** If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing, which shall occur not later than 20 days after adjudication if the child has

been removed from his home, to make a proper disposition of the case.

. . .

42 Pa.C.S.A. § 6341(a) and (c).

In **In re D.A.**, 801 A.2d 614 (Pa. Super. 2002), a panel of this Court stated:

> [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

**Id.** at 617.

"The question of whether a child is lacking proper parental care and control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper care or control, and if so, whether such care and control are immediately available." **In re D.A.**, 801 A.2d at 619 (citation omitted).

Section 6341(c.1) of the Juvenile Act provides as follows:

> **(c.1) Aggravated circumstances.**—If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to

- 10 -

preserve and reunify the family shall be made or continue to be made and schedule a dispositional hearing as required by section 6341(c.1) (relating to disposition of dependent child).

42 Pa.C.S.A. § 6341(c.1).

The Juvenile Act defines "aggravated circumstances" as including the following circumstances:

(2) The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.

(3) The parent of the child has been convicted of any of the following offenses where the victim was a child:

(iii) A misdemeanor under 18 Pa.C.S. § 3126 (relating to indecent assault).

42 Pa.C.S.A. § 6302.

Father and Mother argue that there was no evidence to support the trial court's finding in its August 28, 2014 order that no efforts for reunification were necessary. Father and Mother contend that the trial court wrongly used aggravated circumstances as related to Father and Mother to further deny them any reunification efforts.

Neither Mother nor Father is entitled to relief as both parties concede the existence of sufficient evidence to support aggravated circumstances under section 6302. *See* Father's Brief at 16; Mother's Brief at 17. Mother perpetrated physical abuse against H.R.D. that resulted in serious bodily injury. In addition, Father has been convicted of indecent assault under 18 Pa.C.S.A. § 3126. Since aggravated circumstances were established by

- 11 -

clear and convincing evidence, the trial court acted within its discretion in concluding that CYS no longer needed to provide reunification services. The trial court explained its decision as follows.

> The [trial court] respectfully submits that it properly determined that CYS presented clear and convincing evidence of aggravated circumstances pursuant to 42 Pa.C.S.A. § 6341(c.1) such that reunification services should not be provided to [Mother] and Father with regard to [Child]. [Mother] argues that CYS had not met its burden at the time of the August 28, 2014 Order, but the issue is now moot as [Mother's] attorney acknowledged at the hearing on September 25, 2014, that CYS had fulfilled the statutory requirements of Section 6341 when he stated: "I think statutorily they've checked off all their requirements to establish aggravated circumstances; I'm not going to waste any time arguing over that."
>
> Importantly, the guardian *ad litem* stated that he agreed with CYS's recommendation because he does not believe the parents should be afforded reunification services. He noted that when the incident happened, [Mother] and [Father] did not immediately notify medical staff at the hospital to seek help. Despite their arguments that they are capable of caring for their newborn infant, they are clearly unable to take care of him even when in a supervised environment like a hospital. CYS has experience with [Mother] from November 2013 until present with reunification services. Throughout that experience, [Mother] has made little progress despite being on notice that she must make significant progress, and CYS anticipates that it will seek to end reunification services in November 2014. [Father] has been convicted of Indecent Assault, does not have custody of his two older children, failed to participate successfully in Project Point of Light, and most recently sent an inappropriate photograph of his genitals to a 14-year-old minor child. For all of these reasons, the guardian *ad litem* argued that the best interests of the child would be served by forgoing reunification services. The [trial court] agreed with CYS and the guardian *ad litem*.

Trial Court Opinion re Mother, 10/7/14, at 3-4; Trial Court Opinion re Father, 10/7/14, at 5-6.

- 12 -

After a careful review of the evidence, we find that the trial court's findings of fact and credibility assessments are supported by competent evidence of record. In view of our standard of review as set forth in *In re R.J.T.*, 9 A.3d at 1190, we cannot disturb the findings and credibility assessments of the trial court. *See also In re A.B.*, 19 A.3d 1084, 1093-1094 (Pa. Super. 2011) (stating that this Court will not infringe upon the juvenile court's credibility determinations). Therefore, we affirm the trial court's dependency/disposition and aggravated circumstances orders.

Next, we will address Father's second issue regarding whether the trial court improperly allowed hearsay testimony concerning the psychosocial/sexual evaluation of Father from the Project Point of Light report. Father urges that, in concluding that no reunification efforts were necessary with regard to him, the trial court relied on erroneously admitted testimony regarding a Project Point of Light report without the presence of the author of the report for cross-examination. He contends that the trial court's admission of the content of the Project Point of Light report was in clear violation of Pennsylvania case law and statutory law, specifically 42 Pa.C.S.A. § 6341(d)(2).

The Juvenile Act provides:

**(d) Evidence on issue of disposition.—**

* * *

> (2) The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making the

> reports. Sources of information given in confidence need not be disclosed.

42 Pa.C.S.A. § 6341(d)(2).

The question of whether to admit evidence is in the sound discretion of the trial court, and we review the decision under an abuse of discretion standard. **See A.J.B. v. M.P.B.**, 945 A.2d 744, 749 (Pa. Super. 2008). "An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." **Bulgarelli v. Bulgarelli**, 934 A.2d 107, 111 (Pa. Super. 2007).

> Our Rules of Evidence define hearsay as a statement that:
>
> (1) the declarant does not make while testifying at the current trial or hearing; and
>
> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801(c).

Further, we have explained,

> As a general rule, hearsay is inadmissible, because such evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence. The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. Notably, it is elemental that, [a]n out of court statement which is not offered for its truth, but to explain the witness' course of conduct[,] is not hearsay.

- 14 -

*In re K.A.T.*, 69 A.3d 691, 702 (Pa. Super. 2013) (citations and quotations marks omitted).

In his brief, Father argues as follows.

The September 25, 2014 hearing resulted in additional testimony in an attempt to justify the [t]rial [c]ourt's August 28, 2014 Order that no efforts needed to be made to reunify the family. [] Father's Indecent Assault plea in 2007 was being used against him for two distinct and separate purposes: Aggravated Circumstances and the Order providing no reunification services.

Testimony at the September 25, 2014 hearing also focused on a Project Point of Light assessment done of [] Father. Your undersigned objected to any disclosure of this report and requested a continuing objection to anything brought up by the people at Project Point of Light who performed the assessment (September 25, 2014 Disposition Hearing Transcript, pgs. 26-28).

42 Pa.C.S.A. § 6341(d) provides that the [c]ourt should consider all evidence helpful in making a determination, including whether reasonable efforts are to be made to reunify the family; however, the parties or their counsel are to be afforded an opportunity to examine and controvert written reports and to cross-examine the author of any report being offered. 42 Pa.C.S.A. § 6341(d)(2).

[The Superior Court] indicated in *In Re: R.T.*, 2001 Pa. Super. 157, 778 A.2d 670 (2001), "To permit a physician's extrajudicial statement of medical opinion, made upon examination of a patient, to be received in evidence would run afoul not only of the hearsay exclusion but also of the rule which holds that expressions of medical opinion are generally inadmissible unless the physician expressing the opinion is available for cross-examination." *Id.* (citations omitted).

The [t]rial [c]ourt's admission of the conclusions of the Project Point of Light that they needed to see an 18-month period before [] Father should be allowed near minor children violated not only the general rule espoused above, but also the specific mandate of Pa.C.S.A. § 6341(d)(2). As is raised in Issue II herein, since that testimony should not have been admitted at

- 15 -

the time of the hearing, it did not form the basis for finding that no reunification efforts should be undertaken with respect to [] Father and [Child].

* * *

. . . Objections posed by Trial Counsel to the admission of the opinion and content of the Project Point of Light report were overruled by the Trial Court. (September 25, 2014 Disposition Hearing Transcript, pgs. 26-28). While it is recognized that the admission of evidence is in the sound discretion of the trial court, where the trial court overrides or misapplies the law, or its judgment is exercised in a manifestly unreasonable way, an abuse of discretion will be found. *See Commonwealth v. Kriner*, [915 A.2d 653 (Pa. Super. 2007)].

Consistent with the provisions of the case of *In Re: R.T.*, *supra*, and the express language of 42 Pa.C.S.A. § 6341(d)(2), the Trial Court misapplied the law and abused its discretion in allowing such hearsay statements from the Project Point of Light report to be admitted. This testimony was harmful to [] Father and the erroneous evidentiary decision made by the Trial Court in relying upon and using this testimony in its findings did not amount to harmless error.

Father's Brief, at 18-21.

The trial court reasoned as follows.

[Father] argues that the [trial court] erred and abused its discretion in allowing hearsay evidence related to a Project Point of Light evaluation of [Father]. It is unclear when [Father] argues that the [trial court] did so. At the August 28, 2014 hearing, the [c]ourt sustained [Father's] objection related to the Project Point of Light evaluation because at that time the report was not available for [Father] or his counsel to review. The [c]ourt relied on [Father's] admission that he was involved in Project Point of Light in finding fact number 8 of its August 28, 2014 Order which summarized [Father's] involvement in the program. [Father] appears to be referring to evidence that the [c]ourt permitted at the September 25, 2014 hearing over his objection, though that hearing occurred after the August 28, 2014 Order from which [Father] appeals.

- 16 -

The [c]ourt allowed evidence from the Project Point of Light evaluation pursuant to 42 Pa.C.S.A. § 6341 at the September 25, 2014 hearing over [Father's] objection. [Father's] attorney stated that pursuant to Section 6341(d)(2) he should be afforded an opportunity to examine the reports (which he conceded he had) and to cross-examine individuals making the reports. Those individuals were not present at the hearing and thus could not be cross-examined. The [c]ourt nevertheless allowed minimal testimony from the report regarding [Father's] experience at Project Point of Light. The [trial court] did not rely on this evidence because it also was presented with evidence regarding [Father's] admissions to service providers as to the incident with the inappropriate photograph that he sent to a 14[-]year[-]old child on his cell phone. Any testimony the [c]ourt heard from the report was cumulative and was therefore not relied on by the [c]ourt.

Trial Court Opinion, 10/7/14, at 4-5.

We find that the trial court did not rely on improper hearsay evidence in concluding that Father had engaged in inappropriate behavior toward a minor, and would be unsafe to care for Child, so no reunification efforts would be required. We further conclude that, as of the entry of the August 28, 2014 orders from which the parties have appealed, the record contained clear and convincing evidence that Child met the statutory criteria that define a "dependent child" and that aggravated circumstances were present such that CYS no longer needed to pursue reunification efforts. Since Father was not prejudiced by any evidentiary determination, his evidentiary claim merits no relief. *See A.J.B.*, 945 A.2d at 751 ("To constitute reversible error, an evidentiary ruling must be both erroneous and prejudicial to the complaining party.")

- 17 -

Because the record supports the trial court's findings, we cannot disturb its factual assessments and credibility determinations. *In re R.J.T.*, 9 A.3d at 1190; *see also In re A.B.*, 19 A.3d at 1093-1094. Moreover, as we agree with the trial court's conclusions of law, we affirm the trial court's dependency/disposition and aggravated circumstances orders.

Orders affirmed.

Judge Panella joins this memorandum.

Judge Ott concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/6/2015