In re: D.A., A Minor, Appellee.

Appeal of: J.A., Natural
Mother, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 19, 2002.
Filed June 14, 2002.

Sharon M. Biasca, Pittsburgh, for appellant.

Sarah L. Hart, Pittsburgh, for Children and Youth Services of Allegheny County, appellee.

Before: DEL SOLE, P.J., JOHNSON, HUDOCK, FORD ELLIOTT, ORIE MELVIN, LALLY–GREEN, TODD, BENDER and BOWES, JJ.

BOWES, J.:

¶ 1 This appeal by J.A. ("Mother"), is from the July 21, 2000 order adjudicating her infant daughter, D.A., a dependent child. For the reasons that follow, we reverse the order of dependency.

¶ 2 D.A. was born on May 14, 2000. Shortly after the child's birth, a social worker at Allegheny General Hospital contacted Allegheny County Children, Youth, and Families ("CYF") with concerns regarding Mother's ability to care for D.A. Pursuant to an emergency placement hearing on May 24, 2000, the court transferred temporary legal and physical custody of D.A. to CYF, which placed the child into foster care. On June 23, 2000, CYF filed a petition for dependency, and the court held a hearing on that day, after which the matter was continued. The trial court or-

dered D.A. to be returned to Mother's custody after Mother secured adequate housing. The court held a second emergency placement hearing a week later, on June 30, 2000. The court continued the matter again and ordered D.A. to be returned to Mother's physical custody immediately. On July 21, 2000, following a hearing, the court adjudicated D.A. a dependent child but maintained her in Mother's physical custody. This timely appeal followed.

¶ 3 Initially, we must address CYF's motion to dismiss the appeal as moot. In its motion, CYF contends that since the common pleas court issued an order on February 4, 2002, closing D.A.'s dependency case, Mother resumed legal custody of D.A., and D.A.'s status as a dependent child was dissolved, this appeal has been rendered moot. Motion to Dismiss Appeal as Moot, 2/14/02, at 3.

¶ 4 Our Supreme Court explained the circumstances which invoke the doctrine of mootness as follows:

The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten underway-changes in the facts or in the law-which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."

*In re Gross,* 476 Pa. 203, 209, 382 A.2d 116, 119 (1978) (quoting G. Gunther, *Constitutional Law* 1578 (9th ed.1975)).

¶ 5 As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. *In re Duran,* 769 A.2d 497 (Pa.Super.2001). "An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law." *In re Cain,* 527 Pa. 260, 263, 590 A.2d 291, 292 (1991). In that case, an opinion of this Court is rendered advisory in nature. *Jefferson Bank v. Newton Associates,* 454 Pa.Super. 654, 686 A.2d 834 (1996). "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." *Johnson v. Martofel,* 797 A.2d 943, 946; *In re T.J.,* 699 A.2d 1311 (Pa.Super.1997). The instant appeal presents a situation involving an intervening change in the factual posture of the case, which is described by CYF as follows:

Subsequent to the listing of the case for reargument [before this Court] on February 19, 2002, the Allegheny [County] Court of Common Pleas issued an order closing D.A.'s dependency case. The issuance of such a 'closing order' dissolves D.A.'s status as a dependent child, restoring the Appellant's legal custody of her . . . .

Motion to Dismiss Appeal as Moot, 2/14/02, at 3. Therefore, the mootness doctrine is implicated herein.

¶ 6 Nevertheless, this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court. *Erie Insurance Exchange v. Claypoole,* 449 Pa.Super. 142, 673 A.2d 348 (1996); *Commonwealth v. Smith,* 336 Pa.Super. 636, 486 A.2d 445 (1984).

¶ 7 We conclude that the third exception applies herein. Specifically, Mother will suffer a detriment due to the trial court's initial decision declaring D.A. a dependant child. The finding of dependency regarding D.A. could detrimentally affect any future proceedings in which CYF would be involved with this family, either with D.A. directly or with any other child in the family. In determining whether a child is dependent, "the court must ascertain ... what sort of parental care the child received in the past...." *In the Interest of Ryan C.*, 294 Pa.Super. 417, 440 A.2d 535, 536 (1982). (emphasis added). Any future allegations regarding Mother's care of D.A. necessarily will encompass consideration of the dependency finding rendered herein.

¶ 8 Thus, despite the general prohibition of appellate review of a moot question, we apply the applicable exception herein and address the merits. *See Commonwealth v. Sal–Mar Amusements, Inc.*, 428 Pa.Super. 321, 630 A.2d 1269 (1993) (since it is clear that one of the parties would continue to suffer some detriment from lower court's decision, Superior Court denied motion to quash based on mootness and addressed merits); *Janet D. v. Carros*, 240 Pa.Super. 291, 362 A.2d 1060 (1976) (if one of parties to controversy will continue to suffer some detriment from lower court's decision, appeal will be heard); *Commonwealth ex rel. Finken v. Roop*, 234 Pa.Super. 155, 339 A.2d 764, 767–68 n. 4 (1975) ("mootness doctrine would not apply... [because] the collateral consequences and stigma of being adjudged mentally ill remain to plague appellant throughout his life"); *cf. Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (criminal case moot only if shown that there is no possibility that any collateral legal consequences will be imposed).

¶ 9 We now address the propriety of the dependency adjudication. In the instant case, CYF alleged in its dependency petition that D.A. was a dependent child as defined in 42 Pa.C.S. § 6302(1). That section defines a dependent child as one who:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

Regarding an allegation of dependency, our Supreme Court stated in *In re M.L.*, 562 Pa. 646, 649, 757 A.2d 849, 850–851 (2000):

[A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

¶ 10 When we review the dependency determination of a trial court, we apply the following scope and standard of review:

The standard of review which this Court employs in cases of dependency is broad.

However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re B.B.*, 745 A.2d 620, 622 (Pa.Super.1999) (citations omitted). "Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate." *In re C.J.*, 729 A.2d 89, 92 (Pa.Super.1999) (citing *In re Donna W.*, 325 Pa.Super. 39, 472 A.2d 635 (1984) (*en banc*)).

¶ 11 Mother raises the following issues for our review:

A. Did the trial court err in adjudicating child dependent based on 1) Mother's adolescent involvement in sexual abuse; 2) Mother's past mental health issues; and 3) Mother's indefinite attention span?

B. Did the trial court err in admitting testimony by petitioner/appellee as to allegations not set forth within the dependency petition?

C. Did the trial court err in granting petitioner/appellee two continuances without good cause shown?

D. Did the trial court err in admitting hearsay testimony by a hospital social worker under the business records hearsay exception?

Mother's brief at 4. Our review of the record regarding the first issue compels us to reverse the finding of dependency; therefore, we need not address the other three issues.

¶ 12 The first issue concerns Mother's claim that the court erred in finding D.A. dependent based on Mother's adolescent involvement in sexual abuse, Mother's past mental health issues, and Mother's indefinite attention span. The trial court reviewed the testimony in its Pa.R.A.P.1925(a) opinion and concluded:

I entered the July 21, 2000 order adjudicating the child to be dependent because my overriding concern was protecting the child. The testimony and CYF records introduced at the July 21st hearing raised several questions regarding mother, namely the status of her mental health, her attention span while parenting and the past sexual abuse.

Unfortunately, this case was not presented by CYF in a perfect manner. Most of mother's issues set forth above were the result of the problems which CYF had in presenting competent evidence in an orderly fashion to support its petition. However, when all was said and done, as set forth above, the record contained more than enough evidence to support the finding of dependency. Further, mother's rights were not prejudiced in any way. I did not permit CYF to introduce certain evidence not contained in the petition until counsel for mother had an adequate opportunity to prepare. The rules of evidence were followed where a legitimate issue was raised. The child was returned to mother as soon as mother, by her own admission, was in a position to care for her.

Trial Court Opinion, 12/29/00, at 5. While we do not disagree with the trial court's factual findings, we disagree with the conclusions drawn therefrom. A review of the relevant testimony reveals the following.

¶ 13 The first area of inquiry causing concern to the trial court was the status of

Mother's mental health. Dr. Victor Adebimpe testified on behalf of CYF at the June 23, 2000 hearing. Dr. Adebimpe treated Mother for depression at Mercy Providence Hospital for ten days in 1998, which was two years before D.A. was even born, when Mother was involuntarily committed. Dr. Adebimpe described the medications he prescribed for Mother and noted her subsequent referral to a supportive group home, where Mother resided for three months under Dr. Adebimpe's outpatient care. N.T., 6/23/00, at 20–21. Dr. Adebimpe testified that Mother was compliant with the treatment plan and took her medication. *Id.* at 26. When the doctor last saw Mother in May 1999, "She was taking her medication. She was not depressed. [She was] functioning normally." *Id.* at 27. Dr. Adebimpe had no knowledge concerning Mother's mental state at the time of the hearing. *Id.* at 30–31, 472 A.2d 635.

¶ 14 Dr. Paul Colaico, a psychiatrist with Mercy Behavioral Health, also testified. Dr. Colaico was the attending psychiatrist when Mother was an inpatient at Mercy Providence Hospital from July 8, 1999, until July 12, 1999, well before D.A. was born. Dr. Colaico treated Mother for depression during that four-day period, prescribed the antidepressant Zoloft, and treated her for alcohol abuse based on her self-report of consuming two forty-ounce beers over a period of a few days. N.T., 7/21/00, at 9–10.[1]

¶ 15 We find this testimony of no value to a determination of Mother's current mental health status and conclude it could not form a basis of a finding of dependency. Mother's past mental health diagnosis does not establish that D.A. currently is without proper parental care and

control as required by 42 Pa.C.S. § 6302(1). First, neither doctor testified as to Mother's mental health after D.A. was born. Second, neither doctor offered a scintilla of evidence that Mother's mental health impairs her ability to properly care for D.A. The question of whether a child is lacking proper parental care and control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper care or control, and if so, whether such care and control are immediately available. *Matter of C.R.S.*, 696 A.2d 840 (Pa.Super.1996); *Matter of Read*, 693 A.2d 607 (Pa.Super.1997), *appeal denied*, 555 Pa. 708, 723 A.2d 1025 (1998). Clearly, nothing about either Dr. Adebimpe's or Dr. Colaico's testimony was relevant to the inquiry concerning whether D.A. presently was without proper parental care and control.

¶ 16 The second area of concern noted by the trial court was Mother's "attention span while parenting." Trial Court Opinion, 12/29/00, at 5. The record reveals the following on this issue. Pamela Bower, a social worker at Allegheny General Hospital in newborn care services, testified that while Mother was still in the hospital following D.A.'s birth, Ms. Bower supervised University of Pittsburgh social work students. N.T., 7/21/00, at 16. Ms. Bower read the notes of one of those students, Jamie Kaso, who observed Mother caring for D.A. while a nurse instructed Mother regarding infant care. Ms. Bower testified, "While [Jamie Kaso] was there [with Mother], the nurse, Andrea, continued to teach mom the proper procedure of feeding. Patient disengaged throughout the teaching process [because she] **was sitting there during this process**." *Id.* at

---

1. At the conclusion of his testimony, Dr. Colaico complained to the court of his frustration at being "called to a hearing [at] which I

had little, if anything to offer." N.T., 7/21/00, at 12.

20 (emphasis added). The witness observed that Mother did not follow the nurse's instructions **"and allowed [the infant, D.A.] to sleep."** *Id.* (emphasis added). Ms. Kaso also reported that Mother was "excited to go home. She wants to get things in order." *Id.* at 21. When Ms. Kaso offered Mother a resource list of baby supplies, Mother immediately accepted the offer. *Id.*[2]

¶ 17 Melanie Kautzman, a family specialist in-home worker with Three Rivers Youth, indicated that while she had minimal contact with Mother, she had three concerns about Mother. First, Mother, who had just moved into her residence one week earlier, had difficulty locating her home. The witness stated, "It was a mixup in the names of the roads. It had to be resolved in a gas station." *Id.* at 47. Second, during one weekend visit, Mother was "very easily distracted. When she was feeding the baby, she was watching television." *Id.* at 48. Third, Ms. Kautzman stated that Mother was not sterilizing bottles or nipples.

¶ 18 On the other hand, Ms. Kautzman testified that Mother did not require prompting to change D.A.'s diaper, she utilized "the cues of the baby" to feed the infant on demand, Mother tried to soothe D.A., and at no time was D.A. ever unsafe in Mother's care. *Id.* at 48–52.

¶ 19 Dorthenia Nicholson, a family counselor with Holy Family Institute, worked with Mother in her home on eleven occasions for two to four hours at a time. *Id.* at 53–54. Ms. Nicholson testified that on one occasion, Mother failed to sterilize D.A.'s bottle. When asked if she had any concern regarding Mother's ability to care for D.A. without the assistance of services, the witness responded, "No." *Id.* at 55.

¶ 20 Finally, Jennifer O'Bleck, Mother's case manager from Mercy Behavioral Health who testified at the request of the court, said that she had no concerns as a result of her two observations of Mother. *Id.* at 58.

¶ 21 This combined testimony does not support a determination of dependency. Instructive is *Interest of H.B.*, 293 Pa.Super. 109, 437 A.2d 1229 (1981), where the dependency determination was supported by a nurse's testimony that the child was dirty and smelled of vomit, she needed to have her diaper changed, and the baby's bottle contained sour milk. Our comments in reversing the order of dependency therein are pertinent.

> The present record, however, does not clearly and convincingly establish that proper parental care or control was not immediately available. The isolated incidents of neglect set forth in the record do not necessarily warrant the conclusion that the child was likely to continue suffering such treatment. There was precious little evidence directly addressing appellant's abilities and shortcomings as a parent. The record contains the subjective impressions of nurses who saw appellant with her daughter briefly during hospital visits, as well as those of the foster mother and the caseworker. Absent, however, is any professional evaluation of appellant's parenting abili-

---

**2.** Mother's fourth issue concerns the propriety of admitting Ms. Bower's testimony concerning Jamie Kaso's notes. Ms. Bower did not personally observe Mother, and she was not the custodian of the records so as to authenticate Jamie Kaso's field notes as a business record. Even if this testimony had been authenticated as a business record, it does not compel the finding of dependency. It establishes only that Mother allowed the day-old infant to fall asleep during feeding. As an aside, we observe that newborn infants frequently fall asleep while feeding, and if an infant wants to sleep, not even Gabriel's trumpet will keep the child awake.

ties and the child's prospects with appellant. Moreover, appellant had apparently found a permanent residence as of the time of the master's hearings, thereby taking a major step toward reversing the "pattern of instability" which motivated the lower court's decision at least in part. Lower Court Opinion at 6–7. While we do not mean to minimize the risks facing a child whose parent is unwilling or unable to care properly for her, we simply cannot conclude on the present record that such is the case here.

*Id.* at 1233 (citations omitted). The neglect at issue here consisted solely of Mother's failure to sterilize bottles, significantly less than the neglect at issue in *H.B.*

¶ 22 The final area of concern identified by the trial court was Mother's past sexual abuse. Vickie Lenhart, the CYF supervisor of Mother's caseworker, testified that five years earlier, when Mother was a juvenile, there had been a Childline report filed against her.[3] Ms. Lenhart described the allegation as follows:

> She was baby-sitting for a ten year [old] child and admitted to asking the child to look at her breast and to touch her breast.
>
> She admitted to asking the child to look at his penis and touching his penis. And that's pretty much the basis of the child line.

N.T., 7/21/00, at 29. Ms. Lenhart testified on cross-examination that no criminal charges were filed as a result of the Childline. *Id.* at 31. Regarding her observations of Mother's ability to care for D.A., Ms. Lenhart stated, "I believe mom is parenting the child, but there are some

concerns." *Id.* at 35. Those concerns were the same reports that motivated CYF to become involved with Mother in the first place, i.e., that Mother was not engaged with the child. *Id.* Without providing any other examples of how Mother was neglecting D.A. or providing inadequate care, Ms. Lenhart opined that without in-home services, D.A. would be at high risk. *Id.* at 36.

¶ 23 Mother cites *In re Swope*, 391 Pa.Super. 484, 571 A.2d 470 (1990), as support for her position that the five-year-old Childline report fails to qualify as a basis for a finding that D.A. was without proper care and control. In *Swope*, we examined the court's reliance on past sexual abuse as a basis for present dependency. We stated,

> The difficulty in the case is that, even accepting that incidents of abuse had occurred in the past, there was no "comprehensive inquiry" into whether proper parental care was immediately available or what sort of care Christopher would receive in the future if returned to appellant. Indeed, there was no testimony directly addressing appellant's abilities and shortcomings as a parent, nor was there testimony about whether the alleged acts were isolated incidents or were likely to recur. Also absent from the testimony is any professional evaluation of appellant's parenting abilities and Christopher's prospects with her.
>
> . . . .
>
> While we do not wish to downplay the inappropriateness of that conduct, we also are not prepared to hold—at least absent some testimony on appellant's parenting abilities—that the isolated incidents as set forth in the record are of such a nature as to warrant the conclusion that appellant would be incapable of rendering proper care in the future.

---

3. We will not address Mother's objections regarding whether the testimony properly was

admitted because we determine that it does not support the finding of dependency herein.

*Id.* at 473. We echo this concern in the instant case.

¶ 24 Clearly, in relying on all of the above testimony, the trial court based its decision on the fact that Mother **previously** had been treated for depression, **previously** had been identified as a perpetrator in an "indicated" Childline report, and **presently** was somewhat distracted when caring for her child. We cannot conclude that this record contains clear and convincing evidence that D.A. "is without proper parental care or control" based upon evidence of conduct by Mother "that places the health, safety or welfare of the child at risk...." 42 Pa.C.S. § 6302, Definitions, "**Dependent child.**" This conclusion does not minimize the wholly inappropriate and unacceptable conduct alleged in the Childline nor denigrate why CYF may have begun its investigation. However, the finding of dependency simply is not supported by clear and convincing evidence.

¶ 25 Motion to dismiss filed by CYF denied. Order of dependency reversed. Jurisdiction relinquished.