J-S42001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: L.C., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.C., MOTHER, | |
| Appellant | No. 351 EDA 2015 |

Appeal from the Order Entered December 29, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001916-2013

BEFORE:  SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 13, 2015**

A.C., Mother, appeals from the trial court's order entered December 29, 2014, which removed from Mother's physical custody L.C. ("Child"), a daughter born in May of 2013.[1]  The order transferred Child to the physical custody of the Philadelphia County Department of Human Services ("DHS" or "the Agency") and also ordered Child to remain in the legal custody of DHS.[2]  We affirm.

The trial court set forth the history of this case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] On November 7, 2013, Child had been adjudicated dependent under section 6302(1) of the Juvenile Act, 42 Pa.C.S. §§ 6301-6365.

[2] A.P., Child's father, has not filed an appeal from the disposition order, nor is he a party to this appeal.

On November 7, 2013[,] [Child] was adjudicated dependent by Master Lynne M. Summers. [The trial court adopted the Master's recommendation as an order on that same date.]

On February 6, 2014[,] a permanency review hearing was held. The [trial court] ordered that [C]hild remain in the custody of [M]other at Gaudenzia drug and alcohol treatment program. [M]other was ordered not to leave Gaudenzia drug and alcohol treatment program with [C]hild under any circumstances. Furthermore, the [c]ourt ordered that if [M]other left the drug and alcohol treatment program against medical advice – DHS would obtain an Order of Protective Custody (OPC). Moreover, an OPC would also be obtained if [M]other tested positive for drugs. Mother was referred to the Clinical Evaluation Unit (CEU) for monitoring.

The matter was then listed on a regular basis before judges of the Philadelphia Court of Common Pleas – Family Court Division – Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351, and evaluated for the purpose of determining or reviewing the permanency plan of [C]hild.

On December 29, 2014, a Permanency Review Hearing for [Child] was [held] before the Honorable Jonathan Q. Irvine[.]

Trial Court Opinion, 3/10/15, at 1-2 (unpaginated).

At the permanency review hearing on December 29, 2014, DHS presented the testimony of its social worker, Jocelyn Childs and Norris Holland, the Juvenile Justice Center ("JJC") worker assigned to the case. N.T., 12/29/14, at 5-13. Mother did not testify or present evidence.

On December 29, 2014, the trial court entered an order removing Child from Mother's physical custody and transferring Child to the physical custody of DHS under section 6351 of the Juvenile Act. Child remained in the legal custody of DHS. On January 22, 2015, Mother timely filed a notice

of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother presents the following issue for our review:

1. Whether the evidence was sufficient to support removal of the Minor Child from Appellant, and place her into Agency custody[?]

Mother's Brief at 5.

Mother contends that DHS failed to meet its burden of proof in demonstrating by clear and convincing evidence that Child needed to be removed from Mother's care and placed in the physical custody of DHS. Mother has mental health issues, has admitted to using marijuana, and she was not compliant with services. Mother's Brief at 7. However, Mother asserts that Child was safe and that Mother was meeting Child's needs. Mother alleges that her home was appropriate, and DHS had not observed any instances where Mother was not properly supervising Child. Mother urges that there was "little [evidence] to support any immediate risk to the [C]hild." *Id*. She claims that the evidence was insufficient to support the trial court's placement of Child in the physical custody of DHS.

The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows:

"[T]he standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*,

- 3 -

608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

*In Interest of: L.Z., A Minor Child*, 111 A.3d 1164, 1174 (Pa. 2015).

Further, we have stated that

[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency.

*In re: G., T.*, 845 A.2d 870, 872-873 (Pa. Super. 2004) (quotation marks and citations omitted). Clear and convincing evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In the Interest of: A.B., A Minor*, 63 A.3d 345, 349 (Pa. Super. 2013). In addition, this Court has stated that "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted).

In *In re: D.A., A Minor*, 801 A.2d 614 (Pa. Super. 2002) (*en banc*), we explained the following:

[A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's

physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*Id*. at 617 (citation omitted). Further, the Court in *In re: D.A.* stated that the question of whether a child is lacking proper parental care and control involves two discrete questions: whether the child is presently without proper care or control, and, if so, whether such care and control are immediately available. *Id*. at 619.

In addition, we observe the following instruction of our Supreme Court, as set forth in *R.J.T.*:

> [W]e must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan. Even if an appellate court would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court.

*Id*., 9 A.3d at 1190.

The disposition of a child adjudicated dependent is governed by section 6351 of the Juvenile Act, which provides in relevant part as follows:

> **(a) General rule.--**If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:
>
> > (1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.

(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:

(i) Any individual resident within or without this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.

(ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.

(iii) A public agency authorized by law to receive and provide care for the child.

(2.1) Subject to conditions and limitations as the court prescribes, transfer permanent legal custody to an individual resident in or outside this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child. A court order under this paragraph may set forth the temporary visitation rights of the parents. The court shall refer issues related to support and continuing visitation by the parent to the section of the court of common pleas that regularly determines support and visitation.

42 Pa.C.S. § 6351(a).

Moreover, the trial court is required to make the following preplacement findings:

**(b) Required preplacement findings.--** Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on

the record or in the order of court as follows:

> (1) that continuation of the child in his home would be contrary to the welfare, safety, or health of the child;
>
> (2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or
>
> (3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or
>
> (4) if the court has previously determined . . . that reasonable efforts were not made to prevent the initial removal of the child from his home, whether reasonable efforts are under way to make it possible for the child to return home; or
>
> (5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

The court shall not enter findings under paragraph (2), (3) or (4) if the court previously determined that aggravated circumstances exist and no new or additional reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family are required.

42 Pa.C.S. § 6351(b).

Thus, the trial court may make an appropriate disposition in order to protect the child's physical, mental and moral welfare, including transferring

temporary custody to a public agency. ***In re: M.L.***, 757 A.2d 849, 850–851

(Pa. 2000). Also, this Court has stated:

> Even after a child has been adjudicated dependent, however, a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary. "'Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody.'"

***In re: G., T.***, 845 A.2d at 873 (citations omitted) (alterations in original).

In ***In the Interest of: A.B.***, a panel of this Court explained the

following with regard to when a child should be removed from parental

custody:

> The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this court had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.
>
> ***In re K.B.***, 276 Pa. Super. 419 A.2d 508, 515 (Pa. Super. 1980) (citations omitted). In addition, this Court has stated: "[I]t is not for this [C]ourt, but for the trial court as fact finder, to determine whether [a child's] removal from her family was clearly necessary." ***In re S.S.***, 438 Pa. Super. 62, 651 A.2d 174, 177 (1994).

***Id***. at 349-350. Indeed, "[b]oth Section 6351 and relevant case law state

that the main purpose of the disposition of a depend[e]nt child is to examine

what is in the best interest of that child." ***In the Interest of: Z.W., C.C.,***

***A.R., and N.S. v. Tioga County Human Services Agency***, 710 A.2d 1176, 1178 (Pa. Super. 1998).

In her appellate brief, Mother relies upon the following four cases: ***In Interest of Pernishek***, 408 A.2d 872 (Pa. Super. 1979); ***Rinker Appeal***, 117 A.2d 780 (Pa. Super. 1955); ***In the Interest of Feidler***, 573 A.2d 587 (Pa. Super. 1990); and ***In re: D.A.***, ***supra***. However, we conclude that these cases do not support Mother's claim on appeal.

In ***In re: E.P., a Minor***, 841 A.2d 128 (Pa. Super. 2003), a panel of this Court stated the following:

> [T]his Court has previously interpreted the Juvenile Act to allow for the removal of a dependent child from the custody of his parents only where there is "clear necessity" for such removal and where such removal can be reconciled with the "paramount purpose" of preserving family unity. ***See e.g. In Interest of LaRue***, 244 Pa. Super. 218, 366 A.2d 1271, 1273 (Pa. Super. 1976); ***In Interest of Pernishek***, 268 Pa. Super. 447, 408 A.2d 872, 877 (Pa. Super. 1979); ***In re Donna W.***, 284 Pa. Super. 338, 425 A.2d 1132, 1134 (Pa. Super. 1981). These cases, however, predate the 1998 amendments to the Juvenile Act which, as we explain below, altered the purposes of the Act. Moreover, this Court has also long held that such necessity for removal is implicated where the welfare of the child demands that he be taken from his parents' custody. ***In re S.M.***, 418 Pa. Super. 359, 614 A.2d 312, 314-315 (Pa. Super. 1992). "When a child is . . . being neglected to its detriment, it is the right and duty of the state, acting through its courts, to transfer the child's custody to persons who will treat the child in such a manner as to foster its well-being and promote its health and happiness." ***In re Miller***, 380 Pa. Super. 423, 552 A.2d 261 (Pa. Super. 1988) (citations omitted). This view is reflected in the 1998 amendment to section 6301(b)(1) of the Juvenile Act which added an alternative paramount purpose of "providing another alternative permanent family when the unity of the family cannot be maintained." 42 Pa.C.S.A. § 6301(b)(1). We agree with the Allegheny County Office of Children, Youth and Families ("OCYF")

that by this amendment, part of the General Assembly's implementation of the Adoption and Safe Families Act of 1997 ("ASFA"), 42 U.S.C.A. § 629 (Public Law 105-89), "the focus of the [Juvenile] Act shifted somewhat from its emphasis on family unity to an emphasis on the child impacted by a dependency adjudication. The amendments, in compliance with the Federal legislation, emphasized permanency for children."

*In re: E.P.*, 841 A.2d at 132-133.

Mother has cited *In Interest of Pernishek* for the proposition that, under the Juvenile Act, a child may not be separated from his parents unless such separation is clearly necessary. Mother's Brief at 8. As such, she has appropriately set forth the standard for removal of the child from her care under the current law, as cited above.

In *Rinker Appeal*, this Court reviewed an appeal from a trial court order determining that three children were "neglected" under the Juvenile Court Law, 11 P.S. 243, which was the statutory precursor to the current Juvenile Act. As the Juvenile Court Law statute is no longer in effect, we find *Rinker Appeal* to be inapplicable to the instant matter.

In *Interest of Feidler*, this Court reviewed an appeal from an order removing two minor children from the home of their parents. The order awarded legal and physical custody to the county children and youth services agency under the Juvenile Act. The parents argued that the removal of the children from their home was not clearly necessary. This Court found that, based on the limited record before us, there was no clear and convincing evidence that every reasonable effort had been made to keep

the family together. *Id*. at 532-533. However, as set forth in ***In re: E.P.***, the focus under the Juvenile Act is currently on the well-being of the dependent child, not on preserving family unity to the child's detriment. ***In re: E.P.***, 841 A.2d at 132-133. Moreover, the decision in ***Interest of Feidler*** rested upon the specific facts in that case, which are distinguishable from the facts herein. Thus, we find ***Interest of Feidler*** to be unpersuasive.

Next, in ***In re: D.A.***, this Court reviewed a mother's challenge to a trial court order that adjudicated her infant daughter a dependent child under the Juvenile Act and allowed the child to remain in the mother's physical custody. This Court found insufficient evidence to support the dependency determination under section 6302(1) of the Juvenile Act. The panel could not conclude that there was clear and convincing evidence that the child was without proper parental care or control based on conduct of the mother that placed the health, safety, or welfare of the child at risk. Accordingly, the panel reversed the trial court's dependency adjudication order. ***In re: D.A.***, 801 A.2d at 622. We find the ruling in ***In re: D.A.*** to be inapplicable to the instant appeal, as we are not reviewing an appeal from an order adjudicating a child dependent. Rather, we are reviewing an order that sets forth the disposition of a child previously found to be dependent.

Here, our review of the record reflects that, at the permanency review hearing on December 29, 2014, Ms. Childs testified that Child was one and

one-half years old and was living in Mother's home with DHS supervision. N.T., 12/29/14, at 6. Although Child was doing well, Ms. Childs expressed concerns about Child's developmental behavior and Child's speech development being delayed. *Id*. As a result, Ms. Childs stated that DHS desired for Child to be evaluated. *Id*. Child had no other special needs or services and was current on her medical immunizations. *Id*. at 6-7.

Ms. Childs further opined that it was inappropriate for Child to remain in Mother's home, as Mother was currently noncompliant with her Family Service Plan ("FSP") goal objectives. *Id*. at 7. At Ms. Childs' most recent visit to the home on December 16, 2014, Mother stated that she was going to discontinue her drug and alcohol ("D & A") program. *Id*. In addition, Mother admitted to using marijuana. *Id*. While conducting a food verification on that same date, Ms. Childs observed a box of wine in Mother's refrigerator and viewed alcohol bottles on the floor of Mother's bedroom. *Id*. Ms. Childs expressed that Mother's use of alcohol and marijuana was impairing Mother's ability to parent Child and to render appropriate supervision. *Id*. at 7-8. Also, DHS admitted into evidence a Clinical Evaluation Unit ("CEU") report dated December 18, 2014, which indicated that Mother had not complied with the court's recommendation to go to the CEU for an assessment and that the CEU would like to have her back for an assessment. *Id*. at 8; DHS Ex. 1.

In addition to addressing drug and alcohol issues, Mother's FSP goals included obtaining and maintaining appropriate housing and stabilizing her mental health. *Id*. at 8. Ms. Childs testified that Mother stated she was not receiving therapy for her bipolar disorder diagnosis. *Id*. Ms. Childs explained that Mother has to follow all recommendations, including taking her prescribed medicine, in order to stabilize her mental health. *Id*. at 9. Ms. Childs rated Mother's level of compliance with her FSP objectives as minimal. *Id*. DHS had placement ready for Child on the date of the hearing. *Id*.

On cross-examination by the child advocate, Ms. Childs testified that she had no knowledge of Mother taking any drugs other than marijuana. *Id*. at 10. Ms. Childs testified that she had not directly observed any specific instances where Mother was not correctly supervising Child. *Id*.

On cross-examination by Mother's counsel, Ms. Childs stated that Mother had self-reported smoking marijuana, but Ms. Childs had not detected any odor of marijuana when she visited the home. *Id*. The conditions of Mother's home were suitable for children, and the children in the home were current on their medical appointments. *Id*. Mother's two older boys live with Mother and are in school. *Id*. at 11.

Our review of the record also reflects that Mr. Norris Holland testified that Tuesday, December 23, 2014, was the last time he visited Mother's home. *Id*. at 11. At the visit, Child was safe and her needs were being

met. ***Id***. However, Mr. Holland shared DHS's concerns regarding Mother's use of drugs and alcohol. ***Id***.

At the conclusion of the permanency review hearing, the trial court stated the following:

> Based upon the testimony presented in Court today I'm following the Department[']s recommendations.
>
> No. Weed is not legal yet, and everybody wants to come in and say: Oh, it's okay. You can still smoke weed, drink and watch your children. And that's not working. No.
>
> I wouldn't be doing my job if I let a little baby stay at home with [a] mom that admitted to smoking weed.
>
> Yea, drinking, you're right, drinking is not illegal, but, when you take alcohol in a combination with drugs, well, that presents a different situation.
>
> So, if she's not in drug and alcohol treatment and she's not doing her mental health, so, that combination is dangerous.
>
> So, that's what necessitates this.
>
> The child is committed to the Department of Human Services.

N.T., 12/29/14, at 15-16.

Moreover, in its written opinion, the trial court stated the following:

> In the instant case, the DHS social worker testified that [M]other was non-compliant with her FSP goal objectives. The [c]ourt ordered [M]other to attend a drug and alcohol treatment program. [M]other did enroll in the Gaudenzia drug and alcohol program. Subsequently, [M]other left the Gaudenzia drug and alcohol program and informed the DHS social worker that she was not going to continue in the program. Furthermore, [M]other admitted to the social worker that she was using marijuana. Moreover, the social worker did a home inspection of [Child's] residence and observed a box of wine in [M]other's

- 14 -

refrigerator[,] as well as alcohol bottles on [M]other's bedroom floor. (N.T. 12/29/14, p. 7). Additionally, [M]other was ordered to go to the CEU but failed to comply. (N.T. 12/29/14, p. 8). Lastly, [M]other has untreated mental health issues. [M]other is not receiving appropriate therapy for her mental health issues, specifically her bipolar disorder. (N.T. 12/29/14, pgs. 8-9).

A court may not separate a child from a parent even if the child has been adjudicated dependent unless the court finds that the separation is clearly necessary for the well-being of the child. ***A.N. v. A.N.***, 39 A.3d 326, 331 (Pa. Super. 2012). In the instant case, the [t]rial [c]ourt found that the continuation of [C]hild in the home would be contrary to the welfare, safety or health of [C]hild. [M]other is not compliant with her drug and alcohol treatment program. Furthermore, [M]other is refusing to complete the drug and alcohol program. Moreover, [M]other is continuing to use illegal drugs and drink alcohol. Lastly, [M]other is not complying with her mental health therapy[.] (N.T. 12/29/14, pg[.] 8, 9). The totality of the circumstances necessitated the removal of [C]hild from [M]other. The safety of [C]hild was at risk due to [M]other's continued drug/alcohol abuse and her untreated mental health issues.

The [t]rial [c]ourt made reasonable efforts to allow [C]hild to remain in [M]other's custody. The [c]ourt gave [M]other an opportunity to participate in a drug and alcohol treatment program while retaining custody of [C]hild. [M]other failed to complete the drug and alcohol program[,] and tested positive for illegal drugs[;] therefore, [C]hild was removed from [M]other's custody.

**Conclusion:**

For the preceding reasons, the [c]ourt finds sufficient evidence to support the removal of [C]hild from the custody of [M]other[,] and commit [C]hild to the care and custody of the Department of Human Services. Furthermore, the court finds that its ruling is in the best interest of [C]hild[,] as a result of the testimony regarding [C]hild's safety, protection, mental, physical and moral welfare.

Accordingly, the [t]rial [c]ourt's [o]rder entered on December [2]9, 2014[,] committing [Child] to DHS[,] should properly be affirmed.

Trial Court Opinion, 3/10/15, at 3 (unpaginated).

After a careful review of the record, we find that the trial court's credibility and weight determinations are supported by the competent evidence of record. Thus, we will not disturb them. *In Interest of: L.Z.*, 111 A.3d at 1174. We find that the trial court complied with the mandates of the Juvenile Act in order to protect the best interests of Child in this matter. Accordingly, we find no abuse of the trial court's discretion.

Order affirmed.

Justice Fitzgerald joins the Memorandum.

Judge Mundy Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2015