J-S72032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1225 MDA 2018 |

Appeal from the Dispositional Order, Entered June 21, 2018,
in the Court of Common Pleas of Tioga County,
Juvenile Division at No(s):  CP-59-DP-0000013-2018,
FID: 59 FN-000008-2018.

| | | |
|---|---|---|
| IN THE INTEREST OF: A.O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1226 MDA 2018 |

Appeal from the Dispositional Order Entered, June 21, 2018,
in the Court of Common Pleas of Tioga County,
Juvenile Division at No(s):  CP-59-DP-0000014-2018,
FID# 59-FN-000008-2018.

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:　　　　　　**FILED JANUARY 16, 2019**

C.O. ("Mother") appeals from the orders adjudicating dependent her two

children, 10-year-old son K.O. and 3-year-old daughter A.O., pursuant to 42

Pa.S.C.A. § 6302.[1]   Mother challenges both the substantive finding and whether the juvenile court had jurisdiction.  After careful review, we affirm.

Since late 2017, the family had been on the radar of Tioga County's Department of Human Resources (DHS) in Pennsylvania.[2]  **See** N.T., 5/14/18, at 41.  The pertinent history began on March 1, 2018, when Mother and the children left the home they shared with Father after Mother obtained a Protection From Abuse order against him.  Mother and the children had found a new residence, and lived there for approximately three weeks when a fire started in the garage and burned the residence down.  Fortunately, Mother and the children were visiting Mother's friend in New York.  They remained in New York thereafter.

On April 3, 2018, the day after the fire – and the day after Mother and the children went to New York – DHS in Tioga County, Pennsylvania filed dependency petitions for each child.  They did not seek emergency custody at that time, however, and the juvenile court scheduled a hearing for those petitions for April 24.  The court rescheduled the hearing for May 14 due to Mother's unavailability.  On May 3, DHS applied for and obtained emergency custody.  DHS then filed amended dependency petitions.  Mother indicated that she intended to challenge the court's jurisdiction.  She argued that she

---

[1] S.R. ("Father") does not appeal.

[2] We observe that the family was also the subject of an investigation conducted by the child protective services agency in Tioga County, New York. We specify which Tioga County in each instance.

was now a New York state resident; after briefly staying with a friend, Mother was in the process of securing services and housing through a domestic violence shelter.

On May 14, 2018, the trial court held a combined jurisdiction and adjudicatory hearing; the adjudicatory portion of the hearing extended into a second day of testimony and was completed on May 24, 2018. The court determined that Tioga County, Pennsylvania had jurisdiction to hear the dependency petitions. The court then adjudicated the children dependent.

Mother filed a timely Notice of Appeal and a Concise Statement of Errors Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b). Thereafter, the trial court filed its Rule 1925(a) Opinion. Mother raises the following questions for our review:

1. Did the trial court abuse its discretion in determining that the children were dependent?

2. Did the trial court have jurisdiction to adjudicate the children dependent?

*See* Mother's Brief, at 5.

We apply the following standard of review in dependency cases:

We must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive

inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the trial court's fact-finding function because the trial court is in the best position to observe and rule on the credibility of the parties and witnesses.

*In Interest of K.S.*, 159 A.3d 535, 537 (Pa. Super. 2017)(citation and brackets omitted).

We address the procedural question first.

A dependency proceeding is commenced by, *inter alia*, the filing of a dependency petition. *See* Pa.R.J.C.P. 1200(1) ("Commencing Proceedings). A dependency proceeding may be commenced in the county in which the child resides or which the child is present when it is commenced. *See* 42 Pa.C.S.A. § 6321(b) ("Commencement of proceedings"); *see also* Pa.R.J.C.P. 1300(a)(1-2). The term "residence" is not defined in the Juvenile Act, but we are not without guidance. In *In Interest of J.S.M.*, 514 A.2d 899 (Pa. Super. 1986), we stated:

> "Residence" is defined as, "Personal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently." Black's Law Dictionary 1176 (rev. 5th ed. 1979). "Residence" is compared and distinguished from "domicile" in the following manner,
>
>> As "domicile" and "residence" are usually in the same place, they are frequently used as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily

- 4 -

> presence in that place and also an intention to make it one's domicile.
>
> Black's Law Dictionary.

*In Interest of J.S.M.*, 514 A.2d at 900. (Affirming the juvenile court's denial of the request to transfer jurisdiction).

In this matter, we agree with the trial court's conclusion that the children were residents of Tioga County, Pennsylvania when, on April 3, 2018, proceedings commenced with DHS's filing of dependency petitions. Mother and the children were residing in Tioga, Pennsylvania, for a period of eight months when they left on April 2, 2018 to visit a friend for an "evening visit to ride four wheelers." Mother clarified that the visit was only meant to be temporary and that she had no intention of relocating to New York. *Id.*, at 28. Unfortunately, the fire left their residence uninhabitable and destroyed a considerable amount of their personal possessions. *Id.*, at 6-7. DHS had been working with the family since late 2017, and Mother knew DHS intended to file dependency petitions. *Id.*, at 23-24. K.O. was also enrolled in school in Tioga County, Pennsylvania.

Mother essentially asserts that the Commonwealth's border with New York is a force field, shielding her from DHS' dependency actions. Mother testified that the DHS caseworker "crossed state lines [into New York] and came to her [temporary New York] address, triggering an exacerbated meltdown event in my son because he was scared at the threat that had been given that he was going to be put into a residential treatment center, which is

not the type of medical care that my son needs."[3] *Id.*, at 26. She also testified: "It appears as though the [Commonwealth] has used [dependency petitions] as a power grab to steal my children across state lines." *Id.*, at 28.

On April 3, Mother did not have a residence in New York, she did not register K.O. for school in New York, nor was she receiving any services. Indeed, in May 2018, a New York child protective services agency in New York became aware of the family, after Mother refused to leave K.O.'s hospital bedside for five days. Mother claimed that she thought she was required to stay there, per the mandate of the doctors. In all likelihood, she had no other place to go. In any event, Mother's intention to stay in New York *after* the commencement of the proceedings in Pennsylvania is irrelevant to the question of where the children resided when DHS filed its dependency petitions. We discern no abuse of discretion.

Having concluded the trial court had jurisdiction to hear the adjudication petitions, we now address Mother's other contention, namely, that the children were not dependent for purposes of the Juvenile Act. Section 6302 of the Juvenile Act defines a dependent child, in relevant part, as one who:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's, or other

---

[3] As discussed below, K.O. has significant special needs.

custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.

"The question of whether a child is lacking proper parental care and control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper care or control, and if so, whether such care and control are immediately available." **K.S.**, **supra**, 159 A.3d at 538 (citing **In re D.A.**, 801 A.2d 614, 619 (Pa. Super. 2002)). The trial court must make a "comprehensive inquiry" with regard to these two questions, and the petition must present evidence of a clear and convincing nature. **Id; see also In re R.W.J.**, 826 A.2d 10, 14 (Pa. Super. 2003). Clear and convincing evidence requires that a finding be based on testimony by credible witnesses who clearly relate facts that are "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." **In Interest of J.M.**, 166 A.3d 408, 427 (Pa. Super. 2017). Moreover, a child should not be found to be dependent merely because a sibling has been adjudicated dependent. **In Re G.T.**, 845 A.2d 870, 872 (Pa. Super. 2004)(citation omitted).

Here, we restate the trial court's thorough analysis:

At the adjudicatory hearing the court heard testimony from a number of witnesses, primarily regarding K.O. K.O. was previously diagnosed with Autism, ADHD, ODD, and Klinefelter Syndrome. N.T., at 78. He had severe behavioral problems both at home and at school including an incident at his school where he hit a teacher over the head with an

object and then verbally attacked school staff and responding police. This incident led to K.O. being enrolled in the Partial Hospital Program through Concern Counseling on January 31, 2018. K.O. did not make progress during his time in the program as he continued to have significant behavioral problems and outbursts. Due to being either absent or arriving later on more than half the school days while he attended the program, K.O. missed a lot of the therapeutic group sessions at the partial program. On March 26, 2018 K.O. ran away from the program necessitating the police to respond. The doctor's recommendation at that time was for K.O. to be taken to the emergency room to see if an inpatient stay was in K.O.'s best interest but Mother refused to allow him to go.[4]

After the March 26th incident Mother signed a contract stating if K.O. amassed two more unexcused absences he would be discharged from the program. That was the last day K.O. attended the partial program. Mother also signed a contract when K.O. first enrolled in the program agreeing to meet with the doctor, comply with recommended medication management for K.O., and other requirements.[5]

While Mother and the children were in New York, Mother took K.O. to St. Joseph's Hospital in Chemung County due to his continuing acting out. A.O. stayed at the hospital with Mother and K.O. the entire five days they were there. K.O.'s and A.O.'s behavior at the hospital resulted in a report being called into Tioga County, New York Child Protective Services. The subsequent investigation discovered that while at the hospital Mother failed to adequately supervise both K.O. and A.O. In one incident K.O. ran out of the hospital while Mother did nothing to attempt to stop him or get him once he was outside. In another, A.O. was jamming a pencil into her [own] groin area while Mother sat there and did nothing to stop her. These incidents led to "indicated" reports against Mother for inadequate guardianship and lack of supervision for both K.O. and A.O.

_____

[4] The program coordinators recommended that K.O. be evaluated at the hospital, because K.O. threatened to kill himself. *Id.*, at 50; 53.

[5] Mother had not complied with these requirements.

In New York, an "indicated" report means the investigator found credible evidence to support the allegations.

On May 3, 2018, the court granted Human Services temporary emergency custody of both K.O. and A.O. At that point, neither child had attended school at least since April 2nd. Human Services then placed the children in foster care. K.O., however, did not stay in foster care long due to his continued behavioral issues and he was ultimately admitted to Southwood Psychiatric Hospital in Pittsburgh, where he remained at the time of the adjudicatory hearing.

At the adjudicatory hearing the family's caseworker, Candace Chase, testified. Ms. Chase took over the family's case on March 8, 20[1]8 and during that time Mother was uncooperative. Mother active aggressive towards Ms. Chase, denied Ms. Chase access to the children, and often appeared confused. Mother's noncooperation kept Ms. Chase from properly investigating two Child Line reports that named Mother as the alleged perpetrator and due to Mother's noncooperation the investigations remained open at the time of the adjudicatory hearing.[6] Mother also testified at the adjudicatory hearing and her testimony was often rambling and nonsensical. [Mother's] testimony supported the testimony of other witnesses regarding their respective interactions with Mother.

Based on Mother's actions and inactions, both K.O. and A.O. were without proper care and control needed at the time of the adjudicatory hearing and such care and control was not readily available to them making them both dependent children under the Juvenile Act. […]

A.O. does not have the same behavioral problems as her brother but also did not receive the individualized proper care and control she needed from Mother. Everything revolved around K.O. and A.O. was just brought along. Mother brought A.O. to the hospital in New York for five days and then failed to supervise her to the point A.O. was observed jamming a pencil into her groin area[…]. Mother's lack of cooperation and failure to realize a problem exists demonstrate that removing K.O. from her custody but allowing her to retain custody of A.O. would not result in

_____

[6] Mother left the state with the children.

> Mother suddenly gaining the ability and willingness to provide A.O. with the proper care and control she needs.
>
> At the time of the adjudicatory hearing Father was the subject of an active Protection From Abuse order which granted him only supervised visits with both K.O. and A.O. As he was barred from having unsupervised contact with his children Father was not a ready and willing parent able to provide them proper care and control.

*See* Trial Court Opinion, filed 8/20/18, *5-8 (not paginated) (internal citations to the record omitted).

Mother does not contest much of the court's factual findings. Rather, she largely takes issue with the court's inferences from those findings, and attempts to place those findings in the proper context. For example, Mother acknowledges K.O.'s behavioral issues and her own struggle managing them. She contends that she has attempted to address them, but that the services available to her in Pennsylvania were inadequate for K.O. *See* Mother's Brief, at 22. She admits that she did not enroll K.O. in school from March to May, but she argues that this was because she could not find a "school setting environment that could adequately accommodate" him. *Id.*, at 22-23. Mother reasons that the fire had placed on the family a significant amount of stress. *Id.*, at 16. No doubt, she is correct. However, this does not change the fact that she was unable to provide the children with parental care.

We also note our deference to the trial court's credibility determinations. The trial court explicitly found Mother to be an unreliable narrator. Clearly the trial court did not believe Mother's reasons for allowing K.O. to go without schooling, for refusing to take him to the emergency room following his

suicidal threats, and for failing to supervise A.O. All told, we conclude the trial court's findings and inferences were supported by the record. We discern no abuse of discretion.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/2019