J-A10029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF:  A.H., C.H., E.H., M.H., MINORS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF:  J.L.K., NATURAL MOTHER | No. 1651 WDA 2015 |

Appeal from the Order Dated October 8, 2015
In the Court of Common Pleas of Butler County
Civil Division at No(s): 41, 42, 43, AND 44 OF 2015

BEFORE:  GANTMAN, P.J., BENDER, P.J.E. AND PANELLA

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 21, 2016**

J.L.K. ("Mother") appeals from the order entered October 8, 2015, in the Court of Common Pleas of Butler County, which denied her motions for rehearing.[1]  In her motions, Mother requested a new hearing on the issue of where her minor children should be placed during their dependency.  After careful review, we quash the appeal.

The trial court summarized the factual and procedural history of this matter as follows.

> This case was initiated when the children, [A.H., a male born in November of 2011; C.H., his twin brother; M.H., a male born in May of 2013; and E.H., a female born in February of 2015 (collectively, "the Children")], were detained by the Butler County Children and Youth Agency [("CYA")] on July 23, 2015. A Guardian *ad litem* was appointed to represent the [C]hildren. Attorneys were appointed to represent the parents.

---

[1] Mother purports to appeal from both the order of October 8, 2015, and from shelter care orders dated October 7, 2015, and entered October 15, 2015.  **See** Mother's brief at 7.  Our review of Mother's notice of appeal reveals that she appealed from the October 8, 2015 order only.

A Shelter Care Hearing was held on July 31, 2014. …. At the Shelter Care Hearing, the [C]hildren were placed in the custody of [CYA] pursuant to a safety plan with a maternal aunt and cousin. However, the [C]hildren were eventually placed with Paternal Grandmother pursuant to a safety plan.

Following an Adjudication Hearing, the [C]hildren were found to be dependent on August 6, 2015, for the reasons specifically detailed in the Master's Supplemental Findings and Recommendations docketed August 19, 2015. A Dispositional Hearing was held on August 27, 2015, as specifically detailed in the Master's Supplemental Findings and Recommendations docketed on September 18, 2015. In addition to the other provisions of a very detailed and appropriate Family Service Plan, the [C]hildren were to remain in the custody of [CYA] with placement continuing with Paternal Grandmother.

On September 23, 2015, a caseworker went to the home of Paternal Grandmother after having received a report that the safety plan may have been violated. A specific provision of the safety plan was that Paternal Grandmother was not permitted to have her son, [J.H.], residing in her home. The record indicates that [J.H.] had recently been released from incarceration. The plan permitted him to assist his mother in the residence, but provided that he was not to reside there. The plan also provided that [J.H.] was to maintain sobriety, as he had recently been incarcerated on offenses resulting from abuse of prohibited substances.

Upon inspection of Paternal Grandmother's residence with her consent it was discovered by the caseworker that [J.H.] was present, and it appeared obvious that he had been residing there. [J.H.] also appeared to be under the influence of an intoxicating substance. In addition, the caseworker observed a strong odor of burnt marijuana in the residence.

At that time, the four [C]hildren were taken into custody by [CYA]. ….

Trial Court Opinion, 11/2/2015, at 1-2.

The trial court conducted a hearing on September 24, 2015, to address the removal of the Children from their paternal grandmother's home. At the conclusion of the hearing, the court found that it was appropriate to remove the Children from the residence of their paternal grandmother, and that remaining in the home would be contrary to the Children's needs and welfare. N.T., 9/24/2015, at 9. The court entered shelter care orders confirming this decision on October 15, 2015.

Meanwhile, Mother submitted motions for rehearing on September 29, 2015. In her motions, Mother claimed that the trial court prevented her counsel from conducting cross-examination and presenting evidence during the September 24, 2015 hearing, thereby violating Mother's right to due process and right to counsel.[2] Motion for Rehearing – Pa.R.J.C.P. 1243(B), 9/29/2015, at ¶ 3-5. The court entered an order denying Mother's motions on October 8, 2015. Mother timely filed a notice of appeal on October 16, 2015.[3]

_____

[2] Our review of the record confirms that the trial court informed Mother's counsel during the September 24, 2015 hearing that he did not have a right to conduct cross-examination of the witness presented by CYA. *See* N.T., 9/24/2015, at 9 ("You don't have a right to cross-examine at a shelter care hearing."). We observe that the trial court fails to cite any authority in its opinion in support of the position that Mother's counsel did not have a right to cross-examine CYA's witness.

[3] We note that Mother violated Pa.R.A.P. 1925(a)(2)(i) by failing to file a concise statement of errors complained of on appeal at the same time as her notice of appeal. However, Mother later filed a concise statement on October 26, 2015. We have accepted Mother's concise statement pursuant
*(Footnote Continued Next Page)*

Mother now raises the following issues for our review.

A. Whether the [trial c]ourt committed an error of law and/or an abuse of discretion in denying [Mother] the opportunity to introduce evidence and otherwise be heard on her own behalf and to cross-examine witnesses at the 24 September, 2015 Shelter Care Hearing?

B. Whether the [trial c]ourt denied [Mother] her constitutional right to due process in denying her the ability to introduce evidence and otherwise be heard on her own behalf and to cross-examine witnesses at the 24 September, 2015 Shelter Care Hearing?

C. Whether the [trial c]ourt erred as a matter of law or committed an abuse of discretion by denying [Mother's] request for rehearing as per Pa.R.J.C.P. 1243(B)[?]

Mother's brief at 8 (suggested answers omitted).

Before reaching the merits of Mother's issues, we first must consider whether the October 8, 2015 order was appealable. "'[S]ince we lack jurisdiction over an unappealable order it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order.'" *Gunn v. Automobile Ins. Co. of Hartford, Connecticut*, 971 A.2d 505, 508 (Pa. Super. 2009) (quoting *Kulp v. Hrivnak*, 765 A.2d 796, 798 (Pa. Super. 2000)). It is well-settled that, "[a]n appeal lies only from a final order, unless permitted by rule or statute." *Stewart v. Foxworth*, 65

*(Footnote Continued)* ───────────────

to *In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that a mother's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party).

A.3d 468, 471 (Pa. Super. 2013). Generally, a final order is one that disposes of all claims and all parties. *See* Pa.R.A.P. 341(b).

Instantly, Mother makes no effort to argue that the order of October 8, 2015 is appealable as a final order. Instead, Mother insists that the order is appealable pursuant to the collateral order doctrine. *See* Pa.R.A.P. 313(a) (providing that an appeal may be taken as of right from a collateral order of a lower court). "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

Mother argues that the October 8, 2015 order meets the requirements of the collateral order doctrine because the issue of where the Children should be placed during their dependency is separate from, and collateral to, the dependency itself. Mother's brief at 14-15. Mother further contends that the subject order infringed upon her right to cross-examine witnesses and present evidence, which is too important to be denied review. *Id.* at 15-16. Mother suggests that the order also infringed upon her "right to reunite" with the Children "free of undue interference by … third parties," because placing the Children with a third-party caregiver "creates for parents a large, if not insurmountable, obstacle toward eventual reunification …." *Id.* at 16-17. Mother last asserts that her claim will be irreparably lost if review of the

October 8, 2015 order is postponed, because the issue of where the Children should be placed will be moot by the time a final order is entered. *Id.* at 17.

After carefully examining the record in this matter, we conclude that we lack jurisdiction to consider Mother's claims, as the trial court's October 8, 2015 order does not meet the requirements of the collateral order doctrine. Mother's argument fails with respect to the first requirement of the collateral order doctrine, as placement decisions are an integral part of the dependency process, and are not separable from, or collateral to, the underlying dependency proceedings.[4]

Mother's argument also fails with respect to the second requirement of the collateral order doctrine, as Mother does not have a "right" to determine where the Children are placed. Placement decisions in a dependency matter are made by the trial court, and must be based on the "safety, protection and physical, mental, and moral welfare of the child[.]" 42 Pa.C.S. § 6351(a).

Finally, Mother's argument fails with respect to the third requirement of the collateral order doctrine, as the issue of where the Children should be

_____

[4] For example, the Juvenile Act provides that, generally, trial courts must conduct permanency review hearings every six months after a child has been removed from the care of his or her parent, guardian, or custodian. 42 Pa.C.S. § 6351(e)(3)(i)(A). Following a permanency review hearing, the court must enter an order providing for the "continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S. § 6351(g).

placed during their dependency will not be irreparably lost if we decline to review the October 8, 2015 order. Mother will have numerous additional opportunities to address the Children's placement with the trial court. In the event final orders are entered changing the Children's permanency goals to adoption or terminating Mother's parental rights, and Mother believes that the placement of the Children impaired her ability to achieve reunification, she will be able to appeal and raise the issue at that time.

Moreover, even if we were to conclude that the October 8, 2015 order is appealable, Mother still would not be entitled to relief.

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.…

*In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002) (citations and quotation marks omitted).

Here, the record reveals that the trial court entered permanency review orders on October 27, 2015, pursuant to which the Children were removed from the foster home where they had been residing, and were placed in the care of their paternal aunt, M.C. The orders indicate that a permanency review hearing was "scheduled at the request of both Natural Mother and Natural Father, for consideration of transfer of placement from Agency Approved Foster Care to Relative Care in the home of [M.C.],

Paternal Aunt."[5]    Master's Recommendation – Permanency Review, 10/27/2015, at 1.  Because the Children were placed in the care of M.C. at Mother's request, there is no longer any dispute as to where the Children should reside during their dependency, and Mother's claims are now moot.

Accordingly, the October 8, 2015 order denying Mother's motions for rehearing is not a collateral order pursuant to Pa.R.A.P. 313(b).  This Court lacks jurisdiction to consider Mother's claims, and the appeal must be quashed.  Even if we were to conclude that this Court has jurisdiction, we would hold that Mother's claims are moot.

Appeal quashed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2016

---

[5] **See also** Master's Supplemental Findings and Recommendations as to Permanency Review Hearing of October 22, 2015, 10/27/2015, at ¶ 6 ("Based upon the request of Natural Mother and Natural Father … placement of the Minor Child shall immediately transfer from the Agency approved foster care to the agency approved foster home of [M.C.], Paternal Aunt.").