J-S17032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 78 EDA 2022 |

Appeal from the Order Entered November 30, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-DP-0001546-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: J.Z.I.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 79 EDA 2022 |

Appeal from the Decree Entered November 30, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-AP-0000850-2018

BEFORE:  BOWES, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:                **FILED JULY 21, 2022**

S.C. ("Mother") appeals from the November 30, 2021 order entered in the Philadelphia County Court of Common Pleas, changing the permanency goal from reunification to adoption and the decree involuntarily terminating

her parental rights with respect to her son, J.M., a/k/a J.Z.I.M. ("Child"), born in April of 2017.[1]  After review, we affirm.

The facts underlying this appeal are as follows.  On April 20, 2017, the Philadelphia Department of Human Services ("DHS") received a General Protective Services ("GPS") report alleging Mother is homeless and mentally ill.  N.T., 2/19/21, at 6-7, 9.  The report alleged that Mother had a history of involuntary hospitalizations due to her mental illness.  *Id.* at 10, 13-14.  Specifically, Mother is diagnosed with schizophrenia, bipolar disorder, epilepsy, and anxiety.  *Id.* at 10, 14, 49.

As best we can discern, Child was born prematurely and remained hospitalized until June 9, 2017.  Upon his discharge on that date, the trial court placed him in the emergency protective custody of DHS.   Trial Court Opinion, 3/2/2022, at 2.  The trial court issued a shelter care order on June 12, 2017.

After a hearing on July 25, 2017, the court adjudicated Child dependent. Child's permanency goal was reunification.  N.T., 2/19/21, at 9.  Mother was required to satisfy the following Single Case Plan ("SCP") objectives, in part: to obtain treatment and services for mental health issues; to obtain treatment

---

[1]  By separate decree, the trial court also involuntarily terminated the parental rights of J.M. ("Father") on the same date.   Father has not appealed and is not a party to the present matter.

for drugs and alcohol use; to obtain stable housing; to attend parenting classes; and to attend and participate in supervised visits with Child. *Id.*

Visits would occur twice per month at the home of F.G., Child's paternal aunt and kinship parent, under the supervision of the Community Umbrella Agency ("CUA"). Order of Adjudication, 7/25/17. The trial court further ordered her to undergo anger management treatment. In addition, because DHS learned that Mother had a history of using cocaine, marijuana, and phencyclidine, the trial court required Mother to submit to drug testing. N.T., 2/19/21, at 10. Mother intermittently attended drug treatment at the Wedge Recovery Center ("the Wedge") between 2019 and 2020. *Id.* at 13. However, in November of 2020, the Wedge discharged her for noncompliance. *Id.*

Following a hearing, the trial court entered an order on April 2, 2018, finding that aggravated circumstances exist as to Mother pursuant to 42 Pa.C.S.A. 6302(5), because her parental rights had been involuntarily terminated to two older children. *Id.* at 8-9. Per the order, DHS was to continue to engage with reasonable efforts to reunify Mother and Child. On October 19, 2018, DHS filed petitions to change Child's permanency goal to adoption and to involuntarily terminate parental rights. For reasons unspecified in the record, the trial court held the petitions in abeyance.

Permanency review hearings were conducted at regular intervals in the underlying matter. At the permanency hearings conducted in 2019, the court found Mother had moderately complied with her SCP objectives. However, by

permanency review order dated July 28, 2020, the trial court found Mother to be in minimal compliance with her SCP objectives and to have made minimal progress towards alleviating the circumstances which necessitated Child's original placement. By November 2, 2020, Mother had stopped attending drug and alcohol treatment at Wedge, had not completed parenting classes, continued to receive anger management treatment after completing the course twice before, and had not progressed to unsupervised visitation with Child. N.T., 2/19/21, at 25, 34, 38.

On November 18, 2020, DHS filed an amended petition to involuntarily terminate Mother's parental rights to Child, then three years old, under 23 Pa.C.S.A. § 2511(a), (1), (2), (5), (8), and (b). On November 20, 2020, DHS then filed an amended petition to change Child's permanency goal to adoption.[2]

The trial court held a combined hearing on the amended goal change and termination petitions on February 19, 2021. James King, Esquire, represented Child as his legal counsel, and Kenneth Leichter, Esquire, was Child's guardian *ad litem*. At the hearing, DHS presented testimony from Kendra Mickens, the current CUA case manager, and F.M., Child's paternal

---

[2] Because DHS did not withdraw its 2018 petitions for goal change and for the involuntarily termination of Mother's parental rights, the petitions DHS filed on November 18, 2020, and November 20, 2020, were docketed as "amended" petitions.

aunt and kinship parent, who desires to adopt Child. Mother testified on her own behalf.[3]

At the conclusion of the hearing, the court held the matter under advisement and scheduled the conclusion of the hearing for June 22, 2021. N.T., 2/19/21, at 64. Between the February and November hearing sessions, three permanency review hearings were held; continuances for the June 2021 termination hearing were ordered at all of them for different reasons each time. The court reconvened the termination proceeding on November 30, 2021, for closing arguments.

By order dated and entered on November 30, 2021, the trial court changed Child's permanency goal from reunification to adoption. By decree dated and entered on November 30, 2021, the court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On December 28, 2021, Mother timely filed notices of appeal and concise statements of errors complained of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*.

---

[3] Due to COVID-19 protocols, the first day of testimony was conducted *via* video conference. N.T., 2/19/21, at 1. Upon review of the notes of testimony, multiple parties' answers are transcribed as "unintelligible" or "inaudible" and speakers overlap. Additionally, an unnamed male voice was heard in the background of Mother's connection and seemingly discussed Mother's answers to questions and at one point, seemed to take Mother's phone from her. *Id.* at 56-57, 61. While the trial court admonished parties when they attempted to speak out of turn, it took no action about this interjecting speaker.

Mother raises the following issues on appeal:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother and changing [Child's] goal to adoption pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) where Mother presented evidence that she made significant efforts to perform his[*sic*] parental duties.

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother and changing [Child's] goal to adoption pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) where Mother presented evidence that she made significant efforts to remedy any incapacity or neglect.

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother and changing [Child's] goal to adoption pursuant to 23 Pa.C.S.A. [§] 2511(a)(5) and (a)(8)[.]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother and changing [Child's] goal to adoption pursuant to 23 Pa.C.S.A. [§] 2511(b) where evidence was presented that Mother has a positive parental bond with the child that would be detrimental to sever.

Mother's Brief at 8.[4]

---

[4] We observe that Mother omits any discussion of the goal change order with citation to relevant authority in her brief. Therefore, we conclude that Mother has failed to preserve any claim regarding it. ***See In re M.Z.T.M.W.***, 163 A.3d 462, 465-466 (Pa. Super. 2017) (citation omitted) (reiterating that a claim is waived where an appellate brief fails to provide any discussion of the claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review). In addition, given our disposition of Mother's appeal from the involuntary termination decree, her appeal from the goal change order would be moot even if she had preserved it. ***See In re D.A.***, 801 A.2d 614, 616 (Pa. Super. 2002) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.").

Our standard of review is well established. "In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence." ***In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial' court's findings of fact and credibility determinations if they are supported by the record. ***Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." ***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021).

Simply put, "An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion," or "the facts could support an opposite result." ***In re Adoption of S.P.***, 47 A.3d 817, 826–827 (Pa. 2012). Instead, an appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** at 826. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings. ***Interest of S.K.L.R.***, 256 A.3d at 1123–1124.

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis. 23 Pa.C.S.A. § 2511. The trial court must initially determine whether the conduct of the

parent warrants termination under Section 2511(a). Only if the court determines that the petitioner established grounds for termination under Section 2511(a) does it then engage in assessing the petition under Section 2511(b), which involves a child's needs and welfare. **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). To involuntarily terminate parental rights, the petitioner must prove grounds under both Section 2511(a) and (b) by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **C.M.**, 255 A.3d at 359 (**quoting Matter of Adoption of Charles E.D.M., II**, 708 A.2d 88, 91 (Pa. 1998)).

That we need only agree with any one subsection of Section 2511(a), along with Section 2511(b), to affirm the termination of parental rights is axiomatic. **In re Adoption of K.M.G.**, 219 A.3d 662, 672 (Pa. Super. 2019) (*en banc*) (citation omitted). In this case, we analyze the decree pursuant to Section 2511(a)(2) and (b), which provide as follows.[5]

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without

---

[5] Based on this disposition, we need not review Mother's first and third issues on appeal.

essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may also include acts of refusal and incapacity to perform parental duties. *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021) (citation omitted). We have long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017) (citation omitted). At a termination hearing, the trial court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to cooperate with the agency or take advantage of available services during the dependency proceedings. *In re S.C.*, 247 A.3d at 1105 (citation omitted).

With respect to Section 2511(b), this Court has stated that the trial court "must . . . discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted).  Further,

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.

*In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010).  Our Supreme Court explained, "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269.  The *T.S.M.* Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly.  When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

In the instant case, Mother argues that termination under Section 2511(a)(2) amounts to an abuse of discretion and legal error because Mother was actively working towards reunification with Child and complied with her SCP objectives.  Mother's Brief at 20.  We disagree.

Assuming *arguendo* Mother complied with all SCP objectives, that compliance does not inherently mean she had remedied the conditions and

causes of her incapacity that led to Child's placement. Trial Court Opinion, 3/2/22, at 4. Child's initial placement was due to Mother's mental health issues and her inability to provide adequate housing. N.T., 2/19/21, at 13-14, 49. There is no dispute that Mother is prescribed and takes medication for her anxiety, schizophrenia, and bipolar disorder. *Id.* at 13-14, 49. However, while caseworker Ms. Mickens did not testify to the precise in-home treatment that Mother receives, the record shows that Mother's mental health struggles are so severe that she has required daily in-home nursing care for more than a year. N.T., 2/19/21, at 13-14, 49. Additionally, Mother continually has struggled to control her anger. In fact, after she completed anger management classes, she had an outburst in court during the underlying dependency matter, leading DHS to refer her to anger management for a second time. *Id.* at 48. Ms. Mickens testified that as of the February 19, 2021 hearing, Mother had made minimal progress on the mental health conditions that led to Child's original placement. *Id.* at 21.

Ms. Mickens testified about Mother's uncompleted SCP objectives as well. She testified that Mother has not satisfactorily completed her drug and alcohol counseling, despite having dabbled in the programs at Wedge for more than a year. *Id.* at 11-12. Mother was unsuccessfully discharged after she stopped attending counseling at the Wedge. Ms. Mickens testified that Mother did not complete her parenting classes or obtain suitable housing. *Id.* at 15-17 42. Further, Mother does not seem to take responsibility for failing to visit

Child for nearly a year. Both Ms. Mickens and Mother acknowledge that Mother did not visit Child for ten months between November of 2019, and August of 2020. Mother's Brief at 22; N.T., 2/19/21, at 18. Mother instead blames DHS and Ms. Mickens' by asserting they simply did not answer her calls. *Id.* at 46. Mother technically may have started each of her objectives, but she has not yet remedied the conditions underlying Child's placement, which has lasted more than four years.

Based on the foregoing, we discern no abuse of discretion by the court in concluding that Mother's conduct warrants termination pursuant to Section 2511(a)(2). The record demonstrates Mother's repeated and continued incapacity, neglect, or refusal to remedy her mental health instability, anger management issues, substance abuse, parenting struggles, and housing instability that has caused Child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being. Further, the conditions and causes of Mother's incapacity, neglect, or refusal cannot or will not be remedied. *See In re S.C.*, 247 A.3d at 1105 (citation omitted) (reiterating that the court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during the dependency proceedings).

In her final issue, Mother argues that terminating her parental rights will have a detrimental effect on Child and does not serve his best interests.

Mother's Brief at 22-23. Specifically, Mother argues that the record shows that she had a strong bond with Child because Ms. Mickens stated that the quality of the visits, which had occurred after Mother's return from her ten-month hiatus from all visitations in August of 2020, and the February 19, 2021 hearing, go "great" and observed a bond between them. *Id.* at 19; N.T., 2/19/21, at 19.

Here, Mother's arguments are unsupported in the record and do not contradict the trial court's findings. While Ms. Mickens did use the term "great" to describe the improvement in Mother's interactions with Child during visits after she resumed visiting in August 2020, Ms. Mickens also testified that Mother and Child do not have a parent-child bond. *Id.* at 33. While they may enjoy each other's company, Mother's long absence and significant impairments have rendered her relationship with Child to that of a playmate, instead of a necessary and beneficial relationship. In Ms. Mickens' opinion, terminating Mother's parental rights would not be detrimental to Child's well-being and was in his best interest. *Id.* at 33. When pressed about her word choice on cross-examination, Ms. Mickens stated multiple times that she believed terminating Mother's parental rights would not be detrimental and was in Child's best interest. *Id.* at 33.

Ms. Mickens also definitively stated that Mother had inconsistently visited Child throughout the life of the case. *Id.* at 18. Mother also often left visits early; Ms. Mickens testified that Mother would call the caregiver herself

after about half an hour once Child had begun to cry, before leaving early on her own volition. *Id.* at 18-19. When questioned about why she stopped attending or scheduling visits, Mother testified that she did not visit Child for ten months because nobody at DHS would pick up her calls. N.T., 2/19/21, at 50-53. No other party corroborated that assertion. By her own admission, Mother did not make any other efforts to see her son beyond trying to call DHS. *Id.* at 56. She did not even attempt to call Child's kinship parents. *Id.*

Mother never progressed towards unsupervised visitation with Child because she never completed enough of her SCP objectives. *Id.* at 17, 58. Ms. Mickens also testified that she saw Child refer to his kinship mother as "Mom" during numerous visits between Mother, Child, and Child's kinship mother. *Id.* at 20, 34. As noted above, Child's kinship mother wants to adopt him. *Id.* at 64. Ms. Mickens also stated that Child seemed confused about the role Mother plays in his life. For instance, Ms. Mickens testified that, even though "[Mother] makes him call her mom," Child would keep using the term for his kinship mother anyway. *Id.* at 19, 34. Ms. Mickens ultimately stated that she thought Child did not identify Mother as his caregiver. *Id.* at 19.

The trial court found that terminating Mother's parental rights serves Child's developmental, physical, and emotional needs and welfare pursuant to

Section 2511(b). After careful review of the record, we discern no abuse of discretion.[6]

Decree affirmed. Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/21/2022*

---

[6] Child's guardian *ad litem* filed a brief in support of the decree involuntarily terminating Mother's parental rights.