J-A02026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: V.M.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ROSA MAAS CAAL | : | No. 1337 MDA 2023 |

Appeal from the Order Entered August 24, 2023
In the Court of Common Pleas of York County
Orphans' Court at No(s):  6723-1388

BEFORE:  NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:                    **FILED APRIL 29, 2024**

Appellant, Rosa Maas Caal, appeals from the order entered in the York County Court of Common Pleas, Orphans' Court, which made certain findings about her first cousin, V.M.T. (born in September 2005) ("Child"), relative to Special Immigrant Juvenile Status ("SIJS").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On June 9, 2023, Appellant filed a "Petition for Appointment of Guardian of a Minor and Request for Expedited Hearing."  In her petition, Appellant alleged that, *inter alia*: (1) she is the paternal first cousin of Child; (2) Child's parents reside in Guatemala; (3) Child has resided with Appellant since December

---

[1] "The SIJ[S] statute, 8 U.S.C.S. § 1101(a)(2)(J), provides that a juvenile who qualifies [for SIJS] may apply for lawful permanent residency and thus relief from deportation."  ***Orozco v. Tecu***, 284 A.3d 474, 476 (Pa.Super. 2022).

2022; (4) Child's parents are unable to provide for Child's basic needs including food, shelter, and clothing, due to health and financial reasons; and (5) upon Child's arrival in the United States, Child came under the jurisdiction of the United States Office of Refugee Resettlement, Division of Children's Services, who released Child to Appellant's care upon Appellant's acknowledgement and agreement to the provisions set forth in a Sponsor Care Agreement pertaining to Child's care, safety, and well-being. Appellant sought to be appointed as the guardian of Child and requested an expedited hearing for the court to make certain judicial findings relevant to SIJS.

On June 19, 2023, the court scheduled a hearing for July 21, 2023. At the July 21, 2023 hearing, Appellant testified first. Appellant testified that she currently resides in York County with her husband, daughter, and Child. Appellant explained that she is Child's first cousin. Appellant stated that Child arrived in the United States on December 22, 2022, at which time Child was taken into custody by border patrol. Border patrol ultimately released Child into Appellant's custody, and Child has been living with Appellant ever since. Prior to Child's arrival in the United States, Child lived in Guatemala with her parents and seven siblings.[2] Appellant testified that Child's father is a farmer, and he raises food for the family; Child's mother is a homemaker but also helps on the farm.

_____

[2] Appellant presented evidence that Child's parents did not oppose Appellant's request to be appointed as Child's guardian.

Appellant stated that Child's parents are not always able to provide adequate food for Child. Appellant said that Child came to the United States because she wants to go to school, and her parents are unable to "do anything else for her." (N.T. Hearing, 7/21/23, at 10). Appellant claimed that Child attended school only until ninth grade but "[a]fter she finished ninth grade she couldn't go because…her father couldn't provide more for her." (*Id.* at 11). Appellant explained that Child is enrolled in school in York County and is doing fine in school. Appellant confirmed that she, her mother, and her husband work, and that they generate enough income to provide for Child's food, shelter, and clothing. Appellant testified that Child's parents were unable to provide for Child's basic needs.

Appellant further opined that it would be in Child's best interest for Child to remain in the United States with Appellant because Child can continue her studies, and Appellant and her family can help Child achieve her dream to become a doctor. Appellant maintained that Child will not be able to achieve that dream in Guatemala because her parents cannot afford to help Child with her studies.

Child testified next. Child confirmed that she was 17 years old at the time of the hearing and was residing with Appellant and Appellant's family. Child testified that she is going to school, and Appellant and her family are taking good care of her. Child stated that her parents were not able to provide her with adequate food, shelter, and clothing when she lived with them in

Guatemala. Child said she previously attended school in Guatemala, but if she returned there, Child would not be in school because "there's no money for [her] to go to school." (*Id.* at 20). Child testified that she wants to graduate and become a doctor.

Child explained that she lived in a house of ten people in Guatemala. Child said that her father worked on a farm and grew beans and corn for food. Child stated that her father did not grow enough food to support everyone in the house. Child explained that there were times when there was not enough food to eat, saying "[o]nce or twice a week, there was no food." (*Id.* at 23). "Then my father, if he had any—if he had any money left, he would go to the country, to the country, to buy corn and beans because they do sell that type of stuff over there." (*Id.*) Child testified that there were also times when her father did not have enough money to buy food for meals, which happened "[a]bout three times a week, three days a week, we would have to go hungry, because if there was no money he couldn't buy any food." (*Id.* at 24). Child later stated, however, that it was twice a year that her family went without food. (*Id.* at 27-28).

Child testified that she finished ninth grade but could not go back to school after that in Guatemala because there was not enough money to send her back to school. When she was not in school, Child helped her family grow corn and beans, and she helped her mother around the house. Child said that even when she was helping her family on the farm, there was not enough food

to feed the entire family. Child stated that she cannot return to Guatemala because her parents are not capable of caring for her.

At the conclusion of the hearing, the court appointed Appellant as Child's guardian and care provider. Regarding the findings relative to SIJS, the court gave Appellant one week to submit a brief or memorandum of law. Appellant subsequently filed a post-hearing brief. By order entered August 24, 2023, the court memorialized its appointment of Appellant as guardian of the estate and person of Child. Nevertheless, the court found insufficient evidence that Child's reunification with her parents was not viable based on abuse, abandonment or neglect, that would entitle her to SIJS. Appellant filed a motion for reconsideration on September 8, 2023. While the motion was still pending, Appellant timely filed a notice of appeal on September 22, 2023, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Appellant raises two issues for our review:

> Whether the Orphans' Court erred in concluding that the evidence of record was insufficient to establish that the minor's reunification with her parents is not viable due to abandonment, abuse or neglect as those terms are defined under Pennsylvania law?
>
> Whether the Orphans' Court erred in relying on Guatemalan law when it declined to find that the minor's reunification with her parents is not viable, where the parents required the minor to leave school and work on a farm to help provide for her own basic needs?

(Appellant's Brief at 8).

In her issues combined, Appellant argues that the court erred by deciding there was insufficient evidence that Child was abandoned, abused, or neglected as those terms are defined under Pennsylvania law. Appellant asserts that the Orphans' Court reached this conclusion despite finding that Child's parents removed her from school after ninth grade and required her to work on a farm to contribute to her own care and maintenance. Appellant maintains that under Pennsylvania law, abuse and neglect are present when a parent threatens a child's well-being or impairs a child's health, development, or functioning. Appellant contends that requiring a child to leave school to work on a farm to provide for her own support constitutes a threat to Child's well-being and, almost certainly, an impairment of Child's development.

Appellant further argues that Pennsylvania has a longstanding and compelling interest to protect the health and emotional welfare of children within its borders. Appellant stresses that the laws reflect the public policy in our Commonwealth regarding child welfare and allow the Commonwealth to exercise police powers to enforce these laws for the protection of children when necessary. Appellant submits that the Orphans' Court has the authority, pursuant to the Commonwealth's *parens patriae* interest,[3] to implement the

---

[3] "*Parens patriae* refers to the role of the state as sovereign and guardian of persons under a legal disability to act for themselves such as juveniles." **In re J'K.M.**, 191 A.3d 907, 916 n.10 (Pa.Super. 2018).

policies of this Commonwealth by making child welfare determinations in the context of guardianship proceedings. Appellant emphasizes that the Orphans' Court's paramount concern in guardianship proceedings is the well-being of minors, regardless of whether the child's parents are subject to enforcement actions in this Commonwealth for failing to fulfill their parental duty to protect their child's health, safety, and welfare.

Appellant also highlights that children are required to attend school until the age of 18. Appellant contends that a child who is habitually truant from school meets the definition of a dependent child under the Juvenile Act. As well, Appellant maintains that a child who is without education as required by law meets the definition of a dependent child. Appellant insists that Child's truancy and her parents' violation of child labor laws by requiring her to work on a farm supports a finding that reunification with her parents is not viable. Appellant suggests that reunifying Child with her parents will defeat one of this Commonwealth's primary goals in educating children and will harm Child's well-being.

Appellant acknowledges the court's remarks that truancy would not be an issue for much longer as Child was approaching her eighteenth birthday at the time of the evidentiary hearing. Appellant claims, however, that "[t]he fact that the past harm might end in the near future due to the minor's age is irrelevant. The issue is whether such harm was present at the time of adjudication." (Appellant's Brief at 22). Appellant submits that the court

recognized that the harm to Child would continue even after she turned eighteen because she would likely be deprived of the opportunity of attaining her educational goals in the future. Appellant insists that the court should have applied Pennsylvania law and not Guatemalan law in its reunification viability analysis. Appellant concludes the court erred in its factual findings regarding Child's eligibility for SIJS, and this Court must reverse. We disagree.

SIJS is an immigration status that may be awarded to:

**(J)** an immigrant who is present in the United States—

**(i)** who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, **and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;**

**(ii)** for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

**(iii)** in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that—

**(I)** no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and

**(II)** no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue to such parentage, be accorded any right, privilege, or status under this chapter[.]

8 U.S.C.A. § 1101(a)(27)(J) (emphasis added).

Additionally, the Code of Federal Regulations provides:

**§ 204.11  Special immigrant juvenile classification.**

\* \* \*

(b) Eligibility.  A petitioner is eligible for classification as a special immigrant juvenile under section 203(b)(4) of the Act as described at section 101(a)(27)(J) of the Act, if they meet all of the following requirements:

(1) Is under 21 years of age at the time of filing the petition;

(2) Is unmarried at the time of filing and adjudication;

(3) Is physically present in the United States;

(4) **Is the subject of a juvenile court order(s) that meets the requirements under paragraph (c) of this section**; and

(5) Obtains consent from the Secretary of Homeland Security to classification as a special immigrant juvenile. For [United States Citizenship and Immigration Services ("USCIS")] to consent, the request for SIJ classification must be bona fide, which requires the petitioner to establish that a primary reason the required juvenile court determinations were sought was to obtain relief from parental abuse, neglect, abandonment, or a similar basis under State law.  USCIS may withhold consent if evidence materially conflicts with the eligibility requirements in paragraph (b) of this section such that the record reflects that the request for SIJ classification was not bona fide. USCIS approval of the petition constitutes the granting of consent.

(c) Juvenile court order(s).

(1) **Court-ordered dependency or custody and parental reunification determination. The juvenile court must have made certain judicial determinations related to the petitioner's custody or dependency and determined that the petitioner cannot reunify with their parent(s) due to abuse, neglect, abandonment, or a similar basis under State law.**

(i) The juvenile court must have made at least one of the following judicial determinations related to the petitioner's custodial placement or dependency in accordance with State law governing such determinations:

(A) Declared the petitioner dependent upon the juvenile court; or

(B) Legally committed to or placed the petitioner under the custody of an agency or department of a State, or an individual or entity appointed by a State or juvenile court.

(ii) The juvenile court must have made a judicial determination that parental reunification with one or both parents is not viable due to abuse, abandonment, neglect, or a similar basis under State law. The court is not required to terminate parental rights to determine that parental reunification is not viable.

(2) Best interest determination.

(i) A determination must be made in judicial or administrative proceedings by a court or agency recognized by the juvenile court and authorized by law to make such decisions that it would not be in the petitioner's best interest to be returned to the petitioner's or their parent's country of nationality or last habitual residence.

(ii) Nothing in this part should be construed as altering the standards for best interest determinations that juvenile court judges routinely apply under relevant

State law.

(3) Qualifying juvenile court order(s).

(i) **The juvenile court must have exercised its authority over the petitioner as a juvenile and made the requisite judicial determinations in this paragraph under applicable State law to establish eligibility.**

(ii) The juvenile court order(s) must be in effect on the date the petitioner files the petition and continue through the time of adjudication of the petition, except when the juvenile court's jurisdiction over the petitioner terminated solely because:

(A) The petitioner was adopted, placed in a permanent guardianship, or another child welfare permanency goal was reached, other than reunification with a parent or parents with whom the court previously found that reunification was not viable; or

(B) The petitioner was the subject of a qualifying juvenile court order that was terminated based on age, provided the petitioner was under 21 years of age at the time of filing the petition.

8 C.F.R. § 204.11(b), (c) (emphasis added).

To summarize, SIJS is a federal immigration status available to foreign children in the United States who have been abused, abandoned, or neglected. *See* 8 U.S.C.A. § 1101(a)(27)(J). To obtain SIJS, a child must first apply to a state court for an order finding that he or she meets the statutory and regulatory requirements. *See id.* (SIJS statutory requirements). *See also* 8 C.F.R. § 204.11 (SIJS regulatory requirements). *See also Osorio-Martinez v. Attorney General United States of America*, 893 F.3d 153, 163 (3d. Cir. 2018) (stating: "Alien children may receive SIJ[S] only after satisfying a

set of rigorous, congressionally defined eligibility criteria, including that a juvenile court find it would not be in the child's best interest to return to her country of last habitual residence and that the child is dependent on the court or placed in the custody of the state or someone appointed by the state").

The Third Circuit Court of Appeals set forth the eligibility criteria for SIJS in **Osorio-Martinez** as follows:

> We begin with the requirements for SIJ[S] that show a congressional intent to assist a limited group of abused children to remain safely in the country with a means to apply for [legal permanent resident] status, and that, in effect, establish a successful applicant as a ward of the United States with the approval of both state and federal authorities[.]
>
> This understanding of SIJ[S] is reflected in the very definition of a Special Immigrant Juvenile, *i.e.*, a child "who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."  8 U.S.C. § 1101(a)(27)(J)(i).  It is also compelled not only by the statute's purpose and history, … but also by [the Department of Homeland Security's] own characterization of SIJ[S] as a classification to provide humanitarian protection for abused, neglected, or abandoned child immigrants eligible for long-term foster care[.]  And the SIJ[S] statute's implementing regulations indicate that, to remain eligible for adjustment of status pending visa availability, SIJ[S] designees must remain in the custody of the state court or state agency to which they have been committed.  **See** 8 C.F.R. § 204.11(c)(5) (noting that to be eligible for SIJ[S], an alien must "**continue** to be dependent upon the juvenile court and eligible for long-term foster care" (emphasis added)); **see also** Special Immigrant

Juvenile Petitions, 76 Fed. Reg. 54978-01, 54980 (proposed Sept. 6, 2011) (to be codified at 8 C.F.R pts. 204-05, 245) (noting that "dependency," for purposes of SIJ status, "encompasses dependency, commitment, or custody").

Importantly, that close, dependency relationship with the United States is also borne out by the statutory criteria for SIJ[S] eligibility. To qualify for SIJ[S], applicants not only must be physically present in the United States, unmarried, and under the age of twenty-one, but also, … they must obtain an order of dependency from a state juvenile court. 8 U.S.C. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(c). That order requires the state court to find: (1) that the applicant is "dependent on a juvenile court ... or placed under the custody" of a state agency or someone appointed by the state; (2) that "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or ... habitual residence,"; and (3) that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. § 1101(a)(27)(J)(i), (ii); *see also* 8 C.F.R. § 204.11(a), (c). Moreover, these determinations must be "in accordance with state law governing such declarations of dependency," 8 C.F.R. § 204.11(c)(3), which, depending on the state, may also entail specific residency requirements, *e.g.*, [Pa.R.C.P.] 1915.2(a)(ii) (providing that the dependency action must be brought in the child's home county or a county "which had been the child's home county within six months before commencement of the proceeding"). …

With that order in hand, applicants must then file an application with USCIS, along with "sufficient evidence to establish ... eligibility" and the associated filing fee. The Secretary of Homeland Security must also consent to the grant of SIJ[S], which functions as an acknowledgement that the request for SIJ classification is bona fide—that is, that the benefit is sought primarily ... for the purpose of obtaining relief from abuse or neglect or abandonment.

All of these requirements attest to SIJ[S] designees' dependency and close ties with state and federal authorities, the risk to their well-being in being removed to their countries of origin, and a relationship to the United States

- 13 -

that far exceeds that of aliens on the threshold of initial entry or apprehended within hours of surreptitiously entering the United States.

*Id.* at 168-70 (some internal citations and quotation marks omitted).

Instantly, the court explained its reasons for its findings relative to SIJS as follows:

5. There is insufficient evidence of record for the [c]ourt to find that [Child] is a "special immigrant," entitling her to [SIJS], or her reunification with her parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law. The record is devoid of any evidence of abuse. The record does establish that [Child's] family lives by subsistence farming and has little income, but there is a lack of proof that hunger was prevalent, that family was living below the poverty line, or they did not have enough income for food, shelter, and clothing to constitute neglect, inadvertent or otherwise. To the contrary, no medical evidence of malnourishment was produced, and [Child] testified that when the family did not produce enough food for themselves, her father would buy food from external sources, and she only recalled going without for one or two days a year. We further find that [Appellant] has failed to meet her burden to prove neglect under State law as, based upon the record before us, we are also constrained to find that [Child's] parents have been providing her with adequate essentials of life, including food, shelter, and medical care, to preclude us from making a finding of physical neglect as required under Section 6303 of the Domestic Relations [Code]. 23 Pa.C.S. § 6303.[4] Likewise,

---

[4] *See* 23 Pa.C.S.A. § 6303(b.1) (defining "child abuse" as intentionally, knowingly or recklessly, *inter alia*, (7) causing serious physical neglect of a child). *See also* 23 Pa.C.S.A. § 6303(a) (defining "serious physical neglect" as any of following when committed by perpetrator that endangers child's life or health, threatens child's well-being, causes bodily injury or impairs child's health, development or functioning: (1) repeated, prolonged or egregious failure to supervise child in manner that is appropriate considering child's developmental age and abilities; (2) failure to provide child with adequate essentials of life, including food, shelter or medical care).

the record does not establish abandonment. [Child] decided on her own to relocate to the United States.

6. [Child] has the altruistic goal of becoming a doctor. [Child's] parents do not have the financial resources to pay for [Child's] continuing education in Guatemala. If she returns to Guatemala and resumes living with her family, she will be expected to assist her father with farming to provide for the family instead of continuing her educational pursuits. Based upon the foregoing, [Appellant] also argues that the parents' inability or failure to provide [Child] with an education commensurate with Pennsylvania compulsory school law requirements should constitute a "similar basis under State law" to find that [Child] qualifies for [SIJS], noting that the definition of a dependent child includes a child who is without proper education by law, but without citation to any other authority. We decline the invitation. Under Pennsylvania law, if a student is of "compulsory school age," and does not attend school, she can be subject to Pennsylvania's truancy laws. No evidence was adduced that [Child] was "without proper education as required by law" in Guatemala or her parents violated any truancy laws of that country due to their daughter not attending school. Likewise, no evidence has been nor does the [c]ourt believe can be adduced that [Child] was of "compulsory school age" in Guatemala when she stopped attending school. Given that [Child] is not of compulsory school age in Guatemala and is about to turn age eighteen next month, we cannot find that [Child's] reunification with her parents is not viable due to truancy, as no possible truancy issue will exist upon reunification.

7. The foregoing notwithstanding, the [c]ourt does acknowledge that while reunification of [Child] with her parents is viable, it likely will result in lost educational opportunity and [Child's] continuing education, which is unlikely should she return to Guatemala, is in her best interest. Accordingly, the [c]ourt does conclude that it is not in the best interest of [Child] to be removed from the United States and returned to Guatemala, her country of nationality and last habitual residence for her and her birth parents, but we do not make such conclusion based upon a finding that [Child] has met the statutory requirements entitling her to [SIJS].

- 15 -

(Order, filed 8/24/23, at 2-4) (internal citations and footnotes omitted).

The court elaborated on its rationale in its Rule 1925(a) opinion as follows:

> The [Orphans' Court] takes issue with Appellant's seeming attempt to characterize Paragraph 6 of our Order as constituting a finding that [Child] was subject to illegal or inhuman[e] child labor as defined by the Pennsylvania Child Labor Act. We made no such finding. Importantly, Pennsylvania and US child labor laws themselves generally permit farm work by minors where it occurs on a farm owned and operated by their parent or parents. **See** Exclusions to the Child Labor Act, 2012 P.L. 1209, 151, Section 13(b) (Agricultural employment which is exempt from coverage of the child labor provision of the Fair Labor Standards Act shall be exempt from coverage of this act); **See also** 29 U.S.C. 213(c)(1)-(2) ("the provisions of section 212 of this title relating to child labor shall not apply to any employee employed in agriculture outside of school hours for the school district where such employee is living while he is so employed…" even if the work is deemed hazardous for children under sixteen, as long as the minor is "employed by his parent on a farm owned or operated[5] by such parent"); **See also** 29 U.S.C. 213(a)(6) (exempts minimum wage and maximum hour requirements related to any employee employed in agriculture). In reality, Paragraph 6's main findings were: (1) that [Child], if returned home, would be "expected to assist her father with farming to provide for the family instead of **continuing** her educational pursuits"; and (2) that "no evidence was adduced that [Child] was 'without proper education as required by law' in Guatemala or her parents violated any truancy laws of that country." We would further note that no evidence was adduced before us that the child was working on her parents' farm in Guatemala during school hours while she was matriculated to school.

---

[5] Child testified at the hearing that her father operated the farm, but he did not own it.

Additionally, the [Orphans' Court] believes our reliance on and analysis of the conduct of [Child's p]arents relative to Guatemalan law, as noted in our finding of Paragraph 6, is well founded. Pennsylvania's Education Statutes, regarding compulsory attendance, only apply to individuals under eighteen (18) years of age, who are legal residents of the Commonwealth, who reside with a legal resident, or who are temporarily domiciled in a school district in which their parent is so domiciled for seasonal employment. Based on this standard, it is unclear to the [Orphans' Court] how [Appellant] believes Pennsylvania's Education statutes would apply, prior to [Child's] placement with [Appellant]. Therefore, it is this [c]ourt's opinion that it would be inappropriate and unfair to retroactively apply US law to individuals who did not live in or had no connection to Pennsylvania or the US at the time of their actions and who continue to reside outside of the US. Furthermore, it is this [c]ourt's belief that the record shows [Child's] parents supported, cared, and protected the child as best as they could given their circumstances. Moreover, as also outlined in Paragraph 6 of the Order, [Child] recently became an adult having achieved eighteen years of age, so "no possible truancy issue will exist upon reunification," making [Appellant's] argument moot.[2]

> [2] Since [Child] is now eighteen years of age, she can no longer be required to attend school in Pennsylvania.

The [Orphans' Court], however, continues to acknowledge the likelihood of lost educational opportunity if [Child] is returned to Guatemala, and believes it is in [Child's] best interest to remain in the United States. We made this determination pursuant to 8 C.F.R. § 204.11(c)(2). We specifically declined, nevertheless, to make the determination as contemplated in 8 C.F.R. § 204.11(c)(1) that [Child] cannot reunify with her parents due to abuse, neglect, abandonment, or a similar basis under State law.

(Rule 1925(a) Opinion, filed 9/29/23, at 2-4) (some internal citations omitted)

(original numbering format omitted) (emphasis in original).

The record supports the court's analysis. To be eligible for SIJS, the

court was required to find, *inter alia*, that Child could not reunify with her parents due to abuse, neglect, abandonment, or a similar basis under State law. **See** 8 C.F.R. § 204.11(c)(1). As the Orphans' Court noted, there was no evidence that Child's parents abandoned her. Rather, Child admitted that she reached out to Appellant about coming to the United States to better her life. Appellant alleges that Child's parents either abused or neglected her based on the lack of food available to Child and/or their requirement that Child work on the farm while Child was still a minor instead of continuing with her education. Regarding the former, the court expressly found insufficient evidence that there was inadequate food for Child. Although Child initially testified at the hearing that her family went hungry two or three times a week, the court stated that "[Child's] testimony is that when the question was asked pointedly and without prompting that they went hungry twice a year. So she certainly can't meet it on that standard, because that's my finding. That's my factual finding." (N.T. Hearing at 32). The court acknowledged Child's earlier testimony but stated: "I'm finding as a fact that the family went hungry twice a year." (**Id.**) The record demonstrates that the court believed Child may have been prompted or coached regarding certain testimony. (**See id.** at 26-27, 32).[6]

_____

[6] Although this is not a traditional dependency case, we observe that our standard of review in dependency cases (in which this Court routinely evaluates claims of abuse and neglect), requires this Court to accept the trial
*(Footnote Continued Next Page)*

Regarding the latter claim concerning Child's alleged lack of education,[7] Appellant did not introduce evidence regarding the compulsory school age in Guatemala or evidence to support the testimony that Child's parents could not afford to send her to school past ninth grade. Although Appellant attacks the court's decision not to apply Pennsylvania's laws concerning the compulsory school age, the Orphans' Court noted that any issue concerning compulsory education would become moot in any event under Pennsylvania law after Child turned eighteen. Significantly, Appellant cites no law to support her claim that the "issue is whether such harm was present at the time of adjudication." (Appellant's Brief at 18). In other words, Appellant cites no law to challenge the court's finding of mootness, and she does not assert that any exceptions to the mootness doctrine would apply here.[8] Based upon the foregoing, we

_____

court's findings of fact and credibility determinations if the record supports them, but we are not required to accept the trial court's inferences or conclusions of law. **See In re L.Z.**, 631 Pa. 343, 111 A.3d 1164 (2015).

[7] Regarding the alleged lack of education, Appellant relies on the definition of a dependent child, which includes a child who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for her physical, mental, or emotional health, or morals. **See** 42 Pa.C.S.A. § 6302.

[8] **See In re D.A.**, 801 A.2d 614, 616 (Pa.Super. 2002) (*en banc*) (explaining general rule that actual case or controversy must exist at all stages of judicial process; issue can become moot during pendency of appeal due to intervening change in facts of case or intervening change in law; exceptions to mootness doctrine occur when case involves question of great public importance, question presented is capable of repetition and apt to elude appellate review, or party to controversy will suffer some detriment due to decision of trial court).

see no reason to disturb the court's factual findings concerning Child's eligibility for SIJS. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: 04/29/2024